**MOUNTAIN SOLUTIONS, INC., et al., Plaintiffs,**

v.

**STATE CORPORATION COMMISSION OF THE STATE OF KANSAS, et al., Defendants.**

**Civil Action No. 97–2116–GTV.**

United States District Court,
D. Kansas.

May 23, 1997.

Mark P. Johnson, Jan P. Helder, Jr., Lisa C. Creighton, Sonnenschein, Nath & Rosenthal, Kansas City, MO, for Mountain Solutions, Inc., Sprint Spectrum, L.P., Liberty Cellular, Inc., Mercury Cellular of Kansas, Inc., Western Wireless Corp., DCC PCS, Inc., Dobson Cellular of Kansas/Missouri, Inc.

Marc E. Elkins, Morrison & Hecker, L.L.P., Kansas City, MO, Mark P. Johnson, Nath & Rosenthal, Kansas City, MO, for Topeka Cellular Telephone Co., Inc., Airtouch Cellular of Kansas, Inc., CMT Partners.

Eva Powers, Stephen H. Kukta, Kansas Corp. Com'n, Topeka, KS, for State Corp. Com'n of State of Kansas, National Exchange Carrier Assoc., Inc., Commissioner of State Corp. Com'n of State of Kansas, Timothy E. McKee, Susan M. Seltsam, John Wine.

Michael C. Cavell, William R. Drexel, Southwestern Bell Telephone Co., Topeka, KS, Michael D. Moeller, Shook, Hardy & Bacon, L.L.P., Kansas City, MO, for Southwestern Bell Telephone Co.

James M. Caplinger, Mark E. Caplinger, James M. Caplinger, Jr., James M. Caplinger, Chtd., Topeka, KS., for Bluestem Telephone Co., Blue Valley Telephone Co., Craw-Kan Telephone Cooperative Inc., Elkhart Telephone Co., Inc., Golden Belt Telephone Assoc., Haviland Telephone Co., Inc., JBN Telephone Co., Inc., Kanokla Telephone, Laharpe Telephone Co., Inc., Madison Telephone Co., Inc., Mokan Dial Inc., Mutual Telephone Co., Peoples Mut. Telephone, Pioneer Telephone Assoc., Inc., Rainbow Telephone Cooperative Assoc., Inc., Rural Telephone Service Co., Inc., S & A Telephone Co., S & T Telephone Cooperative Assoc., Inc., Southern Kansas Telephone Co., Inc., Sunflower Telephone Co. Inc., United Tele-

phone Assoc., Inc., Wheat State Telephone Inc.

Victor A. Davis, Jr., Weary, Davis, Henry, Struebing & Troup, Junction City, KS, for Kansas Cable Telecommunications Assoc., Inc.

## MEMORANDUM AND ORDER

VAN BEBBER, Chief Judge.

Plaintiffs bring this action seeking an injunction prohibiting defendants from requiring commercial mobile service providers in Kansas to contribute to the Kansas Universal Service Fund. The case is before the court on the following:

(1) motions to intervene of Southwestern Bell Telephone Company (Doc. 17), Bluestem Telephone Company, et al. (Doc. 26), Kansas Cable Telecommunications Association (Doc. 58), and K.C. SMSA Limited Partnership, et al. (Doc. 68); and

(2) plaintiffs' motions to strike Southwestern Bell's pleadings (Docs.40, 48, 56).

For the reasons set forth below, all motions to intervene, other than that of the Kansas Telecommunications Association, are granted and plaintiffs' motions to strike are denied as moot.

### Background

On April 4, 1996, in response to a legislative mandate under the Kansas Telecommunications Act of 1996, K.S.A. § 66–2001 *et seq.*, the Kansas Corporation Commission ("KCC") established the Kansas Universal Service Fund ("KUSF"). The purpose of the KUSF is to ensure that rural telephone customers, who often are affected adversely by rate rebalancing, continue to enjoy affordable intrastate telecommunications services. By administering the collection and distribution of universal service support payments, the KUSF is able, in theory, to guarantee "that every Kansan will have access to a first class telecommunications infrastructure that pro-vides excellent services at an affordable price." K.S.A. § 66–2001(a).

The KUSF compensates independent local exchange carriers for the revenues lost as a result of the state-imposed mandatory reductions in intrastate access charges.[1] *See id.* §§ 66–2005(c) & 66–2008(a). In this manner, customers enjoy reduced intrastate long-distance rates (albeit offset somewhat with possible increased local service rates) while local exchange carriers minimize the financial setback that rate rebalancing creates.

The specific statute governing KUSF funding states that "every telecommunications carrier, telecommunications public utility and wireless telecommunications service provider that provides intrastate telecommunications services" in Kansas must contribute to the fund on an equitable basis. K.S.A. § 66–2008(b). Acting pursuant to this statute, the KCC issued an order directing, *inter alia,* all wireless communications providers,[2] which are also known as commercial mobile service providers, to contribute a percentage of their retail revenue to the KUSF each month. *See In the Matter of a General Investigation Into Competition within the Telecommunications Industry in the State of Kansas,* No. 190,492–U at ¶¶ 109–110 (Dec. 27, 1996). The KCC further held that the contribution requirement was not inconsistent with any federal law. *Id.* at ¶ 187.

A group of telecommunications industry associations and commercial mobile service providers, five of whom are plaintiffs in this action, subsequently filed a petition for reconsideration of the KCC's December 27, 1996 order. On February 3, 1997, the KCC denied the reconsideration request. Those entities then appealed the KCC's order to the Kansas Court of Appeals, where the matter is now pending.

In the case at bar, ten commercial mobile service providers have brought suit against the KCC, the KCC Commissioners, and the National Exchange Carrier Association, which administers the KUSF, claiming that

---

1. "Access charges" refer to the fees charged by independent local exchange carriers to long-distance companies for use of the carriers' telephone network.

2. Wireless communications providers include companies that use cellular technology as well as companies that use "personal communications services" (PCS) technology.

K.S.A. § 66–2008(b) is preempted by 47 U.S.C. § 332(c)(3), an amended provision of the federal Communications Act of 1934. Plaintiffs contend, therefore, that the KCC's order enforcing section 66–2008(b) contravenes the Supremacy Clause of the Constitution, *see* U.S. Const. art. VI, cl. 2, and must be enjoined. Defendants dispute any preemption issue and insist that the Kansas statute and corresponding KCC order are in conformity with and specifically authorized by 47 U.S.C. § 254(f).

### Discussion

Nearly two dozen independent local exchange carriers and the Kansas Cable Telecommunications Association have moved to intervene in this action as a matter of right pursuant to Fed.R.Civ.P. 24(a)(2). In addition, three commercial mobile service providers have moved to intervene as a matter of discretion pursuant to Fed.R.Civ.P. 24(b)(2). The court first turns to the local exchange carriers' motions.

### I. Local Exchange Carriers' Motions to Intervene

An applicant may intervene as of right if: (1) the application is made in a timely manner; (2) the applicant claims an interest relating to the property or transaction that is the subject of the action; (3) the applicant's interest, as a practical matter, may be impaired or impeded; and (4) existing parties do not adequately represent the applicant's interests. *Coalition of Ariz./N.M. Counties for Stable Econ. Growth v. Department of Interior,* 100 F.3d 837, 840 (10th Cir.1996) (citing Fed.R.Civ.P. 24(a)(2)). It is uncontroverted that the applicants' motions to intervene are timely; only the final three prongs are at issue.

### A. Interests in Property at Issue

To establish the second element of the intervention test, an applicant must show that its interest in the property or transaction at issue is "direct, substantial, and legally protectable." *Coalition,* 100 F.3d at 840 (citations omitted). The "interest" inquiry is highly fact-specific and is "primarily a practical guide to disposing of lawsuits by involv-

ing as many apparently concerned persons as is compatible with efficiency and due process." *Id.* at 841.

The property at issue in this case is the funding of the KUSF. As noted above, the KUSF serves as a mechanism by which independent local exchange carriers may recover the revenues they lose from mandatory intrastate access and toll charge reductions. Revenues are to be recovered on a "revenue neutral basis." K.S.A. § 66–2008(a). The neutrality provision is enforced by requiring all intrastate telecommunications service providers to contribute to the KUSF on an equitable and nondiscriminatory basis. *Id.* § 66–2008(b). The elimination of a significant source of KUSF funding not only could impair the KUSF's ability to maintain its revenue neutrality, but it also could compromise the Kansas Telecommunications Act's underlying purpose of ensuring universal availability of telecommunications services at an affordable rate.

Plaintiffs claim that the local exchange carriers have no interest in this case because, even if plaintiffs are required to contribute to the KUSF, plaintiffs have no obligation to pay funds directly to the carriers. The court finds this argument unpersuasive. The local exchange carriers that are attempting to intervene have reduced their access and long distance rates significantly in conformance with the KCC's December 27, 1996 order. If these entities are to be made whole, as the Kansas legislature envisioned, the KUSF must be funded adequately. Excusing plaintiffs' contributions could jeopardize the financial viability of the fund. The court, therefore, finds that the local exchange carriers have demonstrated a sufficient interest to warrant their intervention in this action.

### B. Potential Impairment of Interests

The third prong of the intervention test requires the applicant to establish that the disposition of the lawsuit "may as a practical matter impair or impede [its] ability to protect [its] interest." *Coalition,* 100 F.3d at 844 (citing Fed.R.Civ.P. 24(a)(2)). Such impairment need not be "of a strictly legal nature." *Id.* (citing *Natural Resources Defense Council v. United States Nuclear Reg-*

*ulatory Comm'n,* 578 F.2d 1341, 1345 (10th Cir.1978)). For the same reasons the court identified in discussing the applicants' interest in this proceeding, the court finds that the local exchange carriers' ability to protect their interests may be impaired by excluding them from the case.

### C. Adequacy of Representation By Existing Parties

The final element that an intervenor applicant must demonstrate is that existing parties do not represent its interests adequately. The applicant's burden on this point is minimal. *Coalition,* 100 F.3d at 844. Plaintiffs argue that the local exchange carriers share the same interests as the defendants, thereby vitiating any need for intervention. The court disagrees. Although representation is presumed to be adequate "when the objective of the applicant for intervention is identical to that of one of the parties," *City of Stilwell v. Ozarks Rural Elec. Coop. Corp.,* 79 F.3d 1038, 1042 (10th Cir.1996) (citation omitted), the carriers are not sufficiently protected by the KCC and other governmental defendants. As a general rule, governmental agencies seeking to protect the interests of the public in a lawsuit are not able to represent effectively the interests of intervenor applicants in the same action. *Coalition,* 100 F.3d at 845 (citing *National Farm Lines v. Interstate Commerce Comm'n,* 564 F.2d 381, 384 (10th Cir. 1977)). The inherent conflict between these two groups "satisfies the minimal burden of showing inadequacy of representation." *Id.* The court finds that the local exchange carriers have established all elements required under Fed.R.Civ.P. 24(a)(2), and grants their motions to intervene.[3]

### II. Kansas Cable Telecommunications Association's Motion to Intervene

In a three sentence motion, the Kansas Cable Telecommunications Association also requests to intervene in this action. In support of its motion, the association notes

that: (1) it is a party to the KCC appeal now pending before the Kansas Court of Appeals, and (2) this court's ruling could impact its members who *may* desire to provide telecommunications services in the future. The association gives no indication of what specific interests it has in the property at issue here nor does it explain how its interests would be impaired by any disposition of the case. Most importantly, it does not even suggest that its interests are not protected adequately by the parties in the suit.[4] Because the association has failed to satisfy the requisite elements of Fed.R.Civ.P. 24(a)(2), the court denies its motion to intervene.

### III. K.C. SMSA Limited Partnership's Motion to Intervene

Three commercial mobile service providers (the Kansas City, Topeka, and Wichita franchises of SMSA Limited Partnership), with interests identical to those of the plaintiffs, also apply to intervene in this action pursuant to Fed.R.Civ.P. 24(b)(2). Rule 24(b)(2) authorizes the court to grant any intervention request "when [the] applicant's claim or defense and the main action have a question of law or fact in common." The decision to order intervention under Rule 24(b)(2) is a matter within the court's sound discretion. *City of Stilwell,* 79 F.3d at 1043. The SMSA Limited Partnerships' motion states that all defendants and intervenors affiliated with this lawsuit have indicated they have no objection to the intervention of the SMSA Limited Partnerships. Accordingly, the court, in its discretion, grants the motion.

IT IS, THEREFORE, BY THE COURT ORDERED that the motions to intervene of Southwestern Bell Telephone Company (Doc. 17), Bluestem Telephone Company, et al. (Doc. 26), and K.C. SMSA Limited Partnership, et al. (Doc. 68) are granted.

IT IS FURTHER ORDERED that Southwestern Bell Telephone Company's motion

---

**3.** The court also predicates its grant of the local exchange carriers' motions to intervene on Fed. R.Civ.P. 24(b)(2).

**4.** The court believes that the independent local exchange carrier intervenors will represent the Kansas Cable Telecommunications Association's interests more than adequately.

for an expedited ruling on its intervention request (Doc. 21) is denied as moot.

IT IS FURTHER ORDERED that the Kansas Cable Telecommunications Association's motion to intervene (Doc. 58) is denied.

IT IS FURTHER ORDERED that plaintiffs' motions to strike Southwestern Bell Telephone Company's pleadings (Docs. 22, 40, 48, & 56) are denied as moot.

**IT IS SO ORDERED.**

