540 S.E.2d 917

**STATE of West Virginia ex rel. Bobby J. BALL, Shirley Ball, and the Estate of Frances J. Ball, Petitioners,**

**v.**

**Honorable John L. CUMMINGS, Judge of the Circuit Court of Cabell County; Barbara S. Taylor, Chief, Office of Water Resources, West Virginia Division of Environmental Protection; Culloden Public Service District; and West Virginia–American Water Company, Respondents.**

No. 26200.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 1, 1999.

Decided Nov. 17, 1999.

Dissenting and Concurring Opinion of Justice McGraw Dec. 13, 2000.

---

William V. DePaulo, Ross & DePaulo, Hurricane and Mary Anne Maul, Charleston, for Petitioners.

Allyn G. Turner, Deputy Chief, Office of Legal Services, Division of Environmental Protection, Charleston, for Barbara S. Taylor.

Ronald J. Flora, Milton, for Culloden Public Service District.

Robert G. McLusky, Scott D. Goldman, Jackson & Kelly, Charleston, for West Virginia–American Water Company.

MAYNARD, Justice.

This case is before the Court upon a petition for writ of mandamus filed by the petitioners, Bobby J. Ball, Shirley Ball and the Estate of Frances J. Ball, against the respondents, the Honorable John L. Cummings, Judge of the Circuit Court of Cabell County; Barbara Taylor, Chief, Office of Water Resources, Division of Environmental Protection; Culloden Public Service District; and West Virginia—American Water Company. The petitioners seek a writ ordering Judge Cummings to permit the petitioners to intervene in an enforcement action brought by the Division of Environmental Protection, pursuant to the West Virginia Water Pollution Control Act, W.Va.Code §§ 22–11–1 to 22–11–28, against the Culloden Public Service District and the West Virginia—American Water Company. We issued a rule to show cause and now grant the writ of mandamus.

# I.

## FACTS

The petitioners, Bobby J. Ball, Shirley Ball and the Estate of Francis J. Ball[1], own 5 acres of land immediately adjacent to and downstream from the Waste Water Treatment Facility in Culloden, W.Va. which is owned by Respondent Culloden Public Service District ("Culloden PSD") and operated by Respondent West Virginia—American Water Company ("WV–AWC"). The wastewater facility is governed by the provisions of the West Virginia Water Pollution Control Act, W.Va.Code §§ 22–11–1 to 22–11–28 ("WPCA").

W.Va.Code § 22–11–8 (1994) of the WPCA prohibits the discharge of pollutants except in compliance with that code section and, *inter alia*, a National Pollutant Discharge Elimination System ("NPDES") permit issued pursuant to W.Va.Code § 22–11–4 (1994).[2] Culloden PSD was issued the NPDES permit on August 8, 1995, which expires August 7, 2000, for the operation of its wastewater treatment plant in Cabell County. WV–AWC has operated the wastewater treatment facility since September 1997. The NPDES permit allows certain discharges of pollutants into state waters and requires the respondents to comply with specific terms and conditions including effluent discharge limitations[3] and monitoring requirements.

On September 15, 1998, the petitioners gave notice to state and federal authorities, Culloden PSD and WV–AWC, pursuant to the federal Water Pollution Prevention and Control Act, 33 U.S.C. § 1365(b) (1994) ("WPPCA"), that they were instituting a civil suit under the WPPCA against Culloden PSD and WV–AWC in 60 days if state authorities did not commence a civil action to require compliance with state and federal water pollution standards.[4] On November 12, 1998, Barbara S. Taylor, Chief of Office of Water Resources, West Virginia Division of Environmental Protection ("DEP"), filed a civil action against Culloden and the WV–AWC ("the defendants") in the Circuit Court of Cabell County, pursuant to the WPCA. The complaint alleged that the defendants exceeded effluent limitations contained in their permit; failed to properly maintain and operate the wastewater facilities and systems of treatment and control at all times; failed to comply with all the terms and conditions

1. According to the petitioners, Francis J. Ball died after the filing of the petitioners' motion to intervene. At her death, the tract of land in which she had retained a life estate interest vested in its entirety with her son, Bobby J. Ball.

2. The federal Water Pollution Prevention And Control Act authorizes the Administrator of the United States Environmental Protection Agency to approve a state national pollutant discharge elimination system program ("NPDES") which implements and administers the federal NPDES program. *See* 33 U.S.C. § 1342(b) (1994). According to the state Department of Environmental Protection, West Virginia has been authorized to implement and administer the NPDES program since 1982.

3. According to W.Va.Code § 22–11–3(9) (1994), " '[e]ffluent limitation' means any restriction established on quantities, rates and concentrations of chemical, physical, biological and other constituents which are discharged into the waters of this state[.]"

4. The WPPCA provides for citizen suits to enforce compliance with that act. According to 33 U.S.C. § 1365(a) (1994), in relevant part:
   [A]ny citizen may commence a civil action on his own behalf ——

   (1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, or
   (2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.
   According to 33 U.S.C. § 1365(b)(1) (1994), in part, no such action may be commenced,
   (A) prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order, or
   (B) if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any citizen may intervene as a matter of right.

of the permit; failed to take immediate measures to prevent the discharge of sewage into waters of the State; and failed to complete construction of a regional wastewater treatment plant on or before April 30, 1998.

On January 7, 1999, the petitioners filed a motion to intervene in the DEP's enforcement action pursuant to Rule 24 of the West Virginia Rules of Civil Procedure. In the intervenor's complaint, the petitioners stated causes of action for trespass, nuisance, violations of the federal WPPCA, and the state WPCA as a result of alleged damage to their land caused by discharges from the wastewater treatment facility. The petitioners asked for declaratory relief; temporary and permanent injunctive relief; compensatory and punitive damages; and costs.

By order of March 22, 1999, the Circuit Court of Cabell County, Judge Cummings presiding, denied the petitioner's motion to intervene. Judge Cummings essentially held that denying intervention does not impair the remedies available to the petitioners; the petitioners' interest in seeking injunctive relief will be satisfied by the DEP action; and the petitioners' intervention would alter the scope of the trial and impede the discovery process.

## II.

### STANDARD OF REVIEW

■ It is well-established that,

A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy.

Syllabus Point 2, *State ex rel. Kucera v. City of Wheeling,* 153 W.Va. 538, 170 S.E.2d 367 (1969). We have characterized the purpose of the writ as the enforcement of an established right and the enforcement of a corresponding imperative duty created or imposed by law. *See State ex rel. Bronaugh v. City of Parkersburg,* 148 W.Va. 568, 136 S.E.2d 783 (1964). This Court has further said that "[m]andamus is a proper remedy to require

the performance of a nondiscretionary duty by various governmental agencies or bodies." Syllabus Point 1, *State ex rel. Allstate Insurance Co. v. Union Public Service District,* 151 W.Va. 207, 151 S.E.2d 102 (1966). Finally, we also recognize that mandamus against a judge is a "drastic and extraordinary remed[y] ... reserved for [a] really extraordinary cause[ ]." *State ex rel. Suriano v. Gaughan,* 198 W.Va. 339, 345, 480 S.E.2d 548, 554 (1996). With these principles to guide us, we now consider the issue before us.

## III.

### DISCUSSION

The petitioners hinge their entire argument on mandatory intervention under W.Va. Rule of Civil Procedure 24(a)(2).[5] The sole issue, therefore, is whether the petitioners have a mandatory right to intervene in the action brought by the DEP against Culloden PSD and WV–AWC.

■ West Virginia Rule of Civil Procedure 24(a)(2) states:

Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Thus, West Virginia Rule of Civil Procedure 24(a)(2) allows intervention of right in an action if an applicant meets four conditions: (1) the application must be timely; (2) the applicant must claim an interest relating to the property or transaction which is the subject of the action; (3) disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant must show that the interest will not be adequately represented by existing parties. We must now determine

---

5. West Virginia Rule of Civil Procedure 24(a)(1) allows for intervention of right "when a statute of this State confers an unconditional right to intervene[.]" The petitioners concede that the state Water Pollution Control Act does not confer such a right.

whether these four conditions are present in this case.

■ We note at the outset that while this Court has considered whether a motion to intervene is timely under Rule 24(a)(2), we have not previously addressed the standards to be used in determining whether the remaining conditions listed above are present. We observe, however, that West Virginia Rule of Civil Procedure 24(a)(2) and Federal Rule of Civil Procedure 24(a)(2), upon which it is based, are substantially similar. Accordingly, "we follow our usual practice of giving substantial weight to federal cases in determining the meaning and scope of our rules of civil procedure." *Lawyer Disciplinary Bd. v. Cunningham*, 195 W.Va. 27, 33, fn. 11, 464 S.E.2d 181, 187, fn. 11 (1995); *see also West Virginia Public Employees Insurance Board v. Blue Cross Hospital Service, Inc.*, 180 W.Va. 177, 375 S.E.2d 809 (1988).

■ There is no dispute that the petitioners' application to intervene in the DEP action was timely. The DEP action was filed on November 17, 1998, and the petitioners' motion to intervene was filed on January 7, 1999. This Court has stated that "[w]hile Rule 24 of the West Virginia Rules of Civil Procedure provides for the intervention of parties upon a timely application, the timeliness of any intervention is a matter of discretion with the trial court." Syllabus Point 10, *Pioneer Co. v. Hutchinson*, 159 W.Va. 276, 220 S.E.2d 894 (1975), *overruled on other grounds, State ex rel. E.D.S. Fed. Corp. v. Ginsberg*, 163 W.Va. 647, 259 S.E.2d 618 (1979). In its order denying the petitioners' motion to intervene, the circuit court found that "timeliness of application is satisfied because less than two months passed before intervention was requested[,]" and this finding is not challenged here.

■ The second condition that the petitioners must meet under Rule 24(a)(2) is an interest relating to the property which is the subject of the DEP's enforcement action. The petitioners argue that they have demonstrated an interest requiring protection which will be affected by the outcome of the DEP action. According to the petitioners, this interest is the speedy enjoinment of the discharge of any further pollution onto their land. Culloden PSD and WV–AWC do not

dispute the petitioners' claim of an adequate interest in the DEP action. We agree that the petitioners have demonstrated an adequate interest under Rule 24(a)(2). However, because this Court has not previously addressed the issue of what constitutes an adequate interest to justify intervention of right under Rule 24(a)(2), we deem it helpful to briefly survey the relevant federal law.

One is hard-pressed to discover a bright line rule adopted by a majority of federal courts on this issue. *See* 59 Am.Jur.2d, Parties § 134 (1987) (noting "the absence of any concise yet comprehensive definition of what constitutes a litigable interest for the purposes of intervention"); 7C Charles Alan Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure*, § 1908, p. 19 (1999 Supp.) ("There is not as yet any clear definition of the nature of the 'interest relating to the property or transaction which is the subject of the action' that is required for intervention of right"); *Conservation Law Foundation v. Mosbacher*, 966 F.2d 39, 41 (1st Cir.1992) ("because the case law varies substantially between courts, no bright line of demarcation exists"); and *Kleissler v. U.S. Forest Service* 157 F.3d 964, 969 (3rd Cir.1998) (recognizing the lack of a " 'precise and authoritative definition' of the interest that satisfies Rule 24(a)(2)" (citation omitted)). However, some general principles are apparent.

■ It is generally agreed that an applicant's interest under a Rule 24(a)(2) motion to intervene must be direct and substantial or legally protectable. One commentator has stated:

> [I]t has been declared that the interest in the subject matter of the litigation must be a substantial interest, a legal interest, or an interest known and protected by the law. "Interest" means a concern which is more than mere curiosity, or academic or sentimental desire. One interested in an action is one who is interested in the outcome or result thereof because he or she has a legal right which will be directly affected thereby or a legal liability which will be directly enlarged or diminished by the judgment or decree therein.

59 Am.Jur.2d Parties § 134, p. 591 (1987) (footnotes omitted). *See also* Eunice A. Eichelberger, *What Is "Interest" Relating To Property Or Transaction Which Is Subject Of Action Sufficient To Satisfy That Requirement For Intervention As Matter Of Right Under Rule 24(a)(2) Of Federal Rules Of Civil Procedure,* 73 A.L.R. Fed. 448 (1985); *Sierra Club v. Espy,* 18 F.3d 1202 (5th Cir.1994); *U.S. v. W.R. Grace & Co.— Conn.,* 185 F.R.D. 184 (D.N.J.1999); and *U.S. v. ABC Industries,* 153 F.R.D. 603 (W.D.Mich.1993). A direct interest has been described as one "of such direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment to be rendered between the original parties." 59 Am.Jur.2d, Parties § 135, pp. 593–594 (footnote omitted). *See also* 67A C.J.S. Parties § 75 (1978); 26 Fed.Proc. L.Ed. Parties § 59:273 (1984); and *U.S. v. Metropolitan Dist. Com'n,* 147 F.R.D. 1 (D.Mass.1993). Said another way, "[a] person has a direct interest justifying intervention in litigation where judgment in the action of itself adds to or detracts from his legal rights without reference to rights and duties not involved in the litigation." 67A C.J.S. Parties § 75, p. 814 (1978) (footnotes omitted). Concerning the significance of the interest, "[i]t is generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Silver v. Babbitt,* 166 F.R.D. 418, 425 (D.Ariz. 1994), *aff'd,* 68 F.3d 481 (9th Cir.1995) (citation omitted). *See also Conservation Law Foundation v. Mosbacher,* 966 F.2d 39, 41 (1st Cir.1992) ("To justify intervention as of right, interests must be 'significantly protectable' " (citation omitted)).

Obviously, such an approach depends heavily upon the specific facts of the case. The court in *Kleissler v. U.S. Forest Service,* 157 F.3d 964, 972 (3rd Cir.1998) described this fact-specific approach as follows:

> Rule 24 demands flexibility when dealing with the myriad situations in which claims for intervention arise. Nonetheless, the polestar for evaluating a claim for intervention is always whether the proposed intervenor's interest is direct or remote. Due regard for efficient conduct of the litigation requires that intervenors should have an interest that is specific to them, is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought. The interest may not be remote or attenuated. The facts assume overwhelming importance in each decision.

We believe such a flexible and fact-specific analysis is in accord with this Court's traditional application of the rules of practice and procedure "to promote the ends of justice[,]" *State v. Greene,* 196 W.Va. 500, 506, 473 S.E.2d 921, 927 (1996) (Cleckley, J., concurring), quoting *Hormel v. Helvering,* 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037, 1041 (1941), while maintaining adequate guidelines to ensure the efficiency and manageability of litigation. Accordingly, we hold that to justify intervention of right under West Virginia Rule of Civil Procedure 24(a)(2), the interest claimed by the proposed intervenor must be direct and substantial. A direct interest is one of such immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment to be rendered between the original parties. A substantial interest is one that is capable of definition, protectable under some law, and specific to the intervenor. In determining the adequacy of the interest in a motion to intervene of right, courts should also give due regard to the efficient conduct of the litigation. Finally, we emphasize that the facts assume overwhelming importance in each decision.

Applying these principles to the instant case, we find that the petitioners claim an adequate interest for intervention of right. The DEP enforcement action was brought to seek injunctive relief and the imposition of civil penalties for discharges of pollutants into the Indian Fork which traverses the petitioners' property. The petitioners claim that the discharges of these pollutants have impaired the use, enjoyment and economic value of their land. Absent the DEP enforcement action, the petitioners could have filed an action under the federal WPPCA or an injunction action to stop the discharges of pollutants into the Indian Fork. Therefore, the interest articulated by the petitioners is capable of definition, protectable under law,

and specific to them. Further, we believe that the interest is of such immediate character that the petitioners will either gain or lose by the effect of the final judgment or consent order between the DEP and the defendants. If the DEP action results in the immediate cessation of pollutants into the Indian Fork, the petitioners will gain the use, enjoyment and value of their property. If the immediate cessation of the discharge of pollutants is not the result of the DEP action, the petitioners will lose by having to endure the continued ill effects of pollutants flowing across their land. Accordingly, we conclude that the petitioners claim an adequate interest under Rule 24(a)(2).

■ The next condition for intervention under Rule 24(a)(2) is that the petitioners are so situated that the disposition of the DEP's enforcement action may, as a practical matter, impair or impede their ability to protect their interest. Culloden PSD and WV–AWC reason that the petitioners' primary interest is money, and the DEP's action in no way prevents the petitioners from bringing a common law action against the defendants for damages. The petitioners, as noted above, argue that their primary interest is the immediate enjoinment of the discharge of pollution onto their land. The petitioners aver that the DEP's action frustrated the filing of their own enforcement action under the federal WPPCA against Culloden and WV–AWC. They also contend that the DEP may dispose of its action by agreeing to an order extending indefinitely the deadline for abatement activities.

■ This Court has not addressed the issue of when disposition of an action impedes or impairs an applicant's ability to protect his or her interest under Rule 24(a)(2). One commentator has stated that under federal Rule 24(a)(2):

It is generally agreed that in determining whether disposition of the action will impede or impair the applicant's ability to protect his interest the question must be put in practical terms rather than in legal terms. The central purpose of the 1966 amendment [of Federal Rule of Civil Procedure 24] was to allow intervention by those who might be practically disadvantaged by the disposition of the action[.]

7C Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 1908, p. 301 (1986) (footnotes omitted). Further it has been said that "[t]he issue of practical impairment is necessarily one of degree and requires a consideration of the competing interests of the plaintiff and defendant in conducting and concluding their lawsuit without undue complication, and of the public in the speedy and economical resolution of legal controversies." 59 Am.Jur.2d Parties § 138, p. 603 (footnote omitted). We find these considerations useful in determining cases such as the instant one. Therefore, we hold that in determining whether a proposed intervenor of right under West Virginia Rule of Civil Procedure 24(a)(2) is so situated that the disposition of the action may impair or impede his or her ability to protect that interest, courts must first determine whether the proposed intervenor *may* be *practically* disadvantaged by the disposition of the action. Courts then must weigh the degree of practical disadvantage against the interests of the plaintiff and defendant in conducting and concluding their action without undue complication and delay, and the general interest of the public in the efficient resolution of legal actions.

In applying this standard to the facts of the instant case, we agree with the petitioners that the disposition of the DEP action may impede their ability to protect their interest. While the DEP's action does not impair the petitioners' ability to bring a common law action for damage to their land, it does prevent them from bringing a federal WPPCA action. The federal Water Pollution Prevention and Control Act, 33 U.S.C. § 1365(a)(1), provides that "any citizen may commence a civil action on his own behalf —— (1) against any person ... who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by ... a State with respect to such a standard or limitation[.]" The petitioners were preparing to bring such an action, by the issuance of a 60–day notice required by 33 U.S.C. § 1365(b)(1), when the DEP filed its own action. According to 33 U.S.C. § 1365(b)(1)(B) no citizen action may be commenced under the federal WPPCA "if the ... State has commenced and is diligently

prosecuting a civil or criminal action in a court of ... a State to require compliance with the standard, limitation, or order[.]" Therefore, the DEP's action against Culloden PSD and WV–AWC foreclosed the petitioners from bringing their own enforcement or compliance action.

Further, the DEP's disposition of its enforcement action may impair the petitioners' ability to protect their interest in the immediate enjoinment of the discharge of pollution onto their property. As acknowledged by WV–AWC, the DEP action will likely be disposed of by a consent order between the DEP and the defendants. This order may enact a longer deadline for the construction of a new waste water treatment facility or other abatement activities than the petitioners are willing to accept. Also, we agree with the petitioners that an opportunity for comment on any proposed consent order, while usually effective to address the concerns of the public at large, is a poor substitute for actual participation by parties with the immediate interests of the petitioners. In addition, even if the provisions of the consent decree were reconsidered in light of the petitioners' comments, this would further delay an ultimate resolution of the DEP action to the disadvantage of the petitioners for whom time is of the essence. Accordingly, we find that disposition of the DEP action may impair the petitioners' ability to protect their interest in seeking immediate injunctive relief.

■ The defendants argue, however, and Judge Cummings found, that to add the petitioners, who are also seeking monetary damages, to the DEP action would change the burden of proof and complicate the issues to be tried. We disagree. The petitioners desire to intervene in the DEP action to ensure that their interest in the timely abatement of the discharge of pollutants into the Indian Fork will be protected. It appears that the issues of how and when this abatement will be affected are central to the resolution of the DEP action. Therefore, the petitioners can participate in the resolution of these issues. On the other hand, the issues involved in the petitioners' action for monetary damages can be bifurcated.[6] In this manner, the interests of the petitioners will be adequately represented, the interests of the DEP and the defendants in conducting their action without undue complication will not be compromised, and the public's interest in the speedy and economical resolution of the DEP action will be facilitated.

■ This brings us to the decisive issue of whether the petitioners' interest is adequately represented by the DEP. The defendants aver that federal courts have ruled that when a proposed intervenor's interests are being adequately represented by a governmental entity which is a party to the action, intervention should be denied. For support, the defendants cite *State of Texas v. United States Dept. of Energy*, 754 F.2d 550, 553 (5th Cir.1985) in which the court held that "where, as here, the existing representative in the suit is the government, there is a presumption of adequate representation which may be overcome by an intervenor only upon a showing of adversity of interest, the representative's collusion with the opposing party, or nonfeasance by the representative" (citations omitted). The defendants also rely upon *Amalgamated Transit Union Intern. v. Donovan*, 771 F.2d 1551, 1553 (D.C.Cir.1985), *appeal dismissed, Metropolitan Atlanta Rapid Transit Authority v. Amalgamated Transit Union Intern., AFL–CIO*, 475 U.S. 1042, 106 S.Ct. 1255, 89 L.Ed.2d 566 (1986), *and cert. denied*, 475 U.S. 1046, 106 S.Ct. 1262, 89 L.Ed.2d 572 (1986) where the court reasoned that where the proposed intervenor's interests would only be protected if the government prevailed in the main action, it would "border[ ] on being frivolous" to argue that the govern-

---

6. *See* West Virginia Rule of Civil Procedure 42(c) concerning separate trials. Also, concerning the necessity of bifurcation of issues relating to alleged injury to the petitioners' property and requests for monetary damages, we note that W.Va.Code § 22–11–27 (1994) states in pertinent part:

An order of the director or of the board, the effect of which is to find that pollution exists, or that any person is causing pollution, or any other order, or any violation of any of the provisions of this article shall give rise to no presumptions of law or findings of fact inuring to or for the benefit of persons other than the state of West Virginia.

ment was not an adequate representative for the intervenor's interests. The defendants conclude that the DEP is fully capable of enforcing the permits it issues without assistance from the petitioners. In his order denying the petitioners' motion to intervene, Judge Cummings held:

> The Ball's interest in seeking injunctive relief will be satisfied by the DEP. As noted in the West Virginia–American Water Company's Opposition to Intervention memorandum, the DEP is required to allow public comment on the proposed consent order and the Court could consider the Ball's comments at that time. There is no legitimate reason why the DEP would not represent the best interest of private citizens in this matter.

We disagree.

■ Again, our survey of applicable federal cases reveals that the law in this area is not well-settled. First, courts are split concerning who has the burden of showing adequacy or inadequacy of representation, the party seeking intervention or the party opposing it. *See Bates v. Jones,* 904 F.Supp. 1080, 1087 (N.D.Cal.1995) ("The burden is on the applicant to demonstrate the inadequacy of the present representation"); *National Farm Lines v. I.C.C.,* 564 F.2d 381, 383 (10th Cir.1977) ("the burden, although slight, continues to be on the petitioners to show that the representation by parties may be inadequate"); *Alexander v. F.B.I.,* 186 F.R.D. 21, 31 (D.D.C.1998) ("the burden is on those opposing intervention to show that representation for the absentee will be adequate" (citation omitted)); 7C Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure,* § 1909; and 26 Fed. Proc., L.Ed. § 59:300. Even those courts which place the burden of proof on the applicant generally agree, however, that the burden showing inadequate representation is minimal, and that a liberal view toward allowing intervention should be followed. *See Sierra Club v. Robertson,* 960 F.2d 83, 86 (8th Cir.1992) ("Doubts regarding the propriety of permitting intervention should be resolved in favor of allowing it, because this serves the judicial system's interest in resolving all related controversies in a single action" (citation omitted)); 26 Fed. Proc. L.Ed. § 59:301; and 7C Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 1909 (1986). It is also to be remembered that a proposed intervenor need only show that his claimed interest *may* not be adequately represented; no showing of actual inadequacy is required. *See* West Virginia Rule of Civil Procedure 24(a)(2) and 59 Am.Jur.2d Parties § 140.

■ Courts also lack agreement concerning the proper standard to be used in determining the adequacy of representation. One commentator has opined that "courts have developed a perplexing variety of tests, standards, and analytical frameworks. This has lead at least one court to note that there is some doubt as to the correct standard applicable in determining adequacy of representation." 26 Fed.Proc. L.Ed. Parties § 59:302 (footnote omitted). A review of this perplexing variety of tests would be of little utility here. Instead, it is sufficient to recognize that generally courts compare the interests asserted by the proposed intervenor with the interests of the existing party. *See* 59 Am. Jur.2d Parties § 141. If the proposed intervenor's interest is not represented by the existing party, or the existing party's interests are adverse to those of the proposed intervenor, intervention should be granted. If the interests of the proposed intervenor and the existing party are similar, "a discriminating judgment is required on the circumstances of the particular case, but [the proposed intervenor] ordinarily should be allowed to intervene unless it is clear that the [existing] party will provide adequate representation for the absentee." 7C Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 1909, p. 319 (footnote omitted). *See also* 26 Fed. Proc. L.Ed. Parties § 59:303. Finally, if the interests are identical, intervention should be denied unless there is a compelling showing as to why the existing representation is inadequate. *See* 26 Fed.Proc. L.Ed. Parties § 59:303. A compelling showing may include, but is not limited to, adversity of interest, the representative's collusion with an opposing party, or nonfeasance by the representative. 26 Fed.Proc. L.Ed. Parties § 59:304.

Ordinarily, in actions such as the one involved here in which a government agency represents the public interest, it has been held that a proposed intervenor must make a strong showing of inadequate representation. *See* 26 Fed.Proc. L.Ed. Parties § 59:322; and 7C Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 1909. However, other courts have found that government agencies cannot adequately represent private interests in litigation. *See Mountain Solutions v. State Corp. Com'n,* 173 F.R.D. 300, 304 (D.Kan.1997) ("As a general rule, governmental agencies seeking to protect the interests of the public in a lawsuit are not able to represent effectively the interests of intervenor applicants in the same action" (citations omitted)); *National Farm Lines v. I.C.C.,* 564 F.2d 381, 383 (10th Cir.1977) ("Other cases have recognized the inadequacy of governmental representation of the interests of private parties" (citation omitted)); *In re Sierra Club,* 945 F.2d 776 (4th Cir.1991); and *Cabot LNG Corp. v. Puerto Rico Elec. Power,* 162 F.R.D. 427 (D.Puerto Rico 1995). Also, it has been held that when the proposed intervenor asserts some specialized interest, intervention is granted absent a strong showing of inadequate representation. *See* 7C Charles A. Wright, *Federal Practice and Procedure* § 1909; and 26 Fed.Proc. L.Ed. Parties § 59:322. *But see contra, Solid Waste Agency v. U.S. Army Corps. of Engineers,* 101 F.3d 503 (7th Cir.1996).

A case analogous to the instant one in which a specialized interest was shown is *United States v. Reserve Mining Company,* 56 F.R.D. 408 (D.Minn.1972). In that case, the United States government filed an action against Reserve Mining Company alleging that Reserve had violated the Federal Water Pollution Control Act. The alleged violation consisted of an allegation, in part, that certain state water quality standards adopted by the State of Minnesota, with federal approval, were violated. The purpose of the action was to secure abatement of the alleged pollution. Several environmental groups sought to intervene in the action as plaintiffs. The court found that these groups represented the interest of specific property owners and the interest of the groups' members in Lake Superior as a source of drinking water, re-

creation, and conservation. After finding that these groups satisfied the first two requirements of Rule 24(a)(2), the court addressed the question of whether the groups' interests would be adequately represented by the government. In concluding that the groups should be allowed to intervene, the court reasoned:

> While there may be a similarity of interests asserted between the environmental groups and the United States, the similarity does not necessarily mean that there will be adequate representation of those interests by the United States. Assuming that the end result which the United States is seeking is an abatement of pollution of Lake Superior by Reserve Mining Company, the Court must assume that there is more than one method of achieving that abatement. If the environmental groups maintain an interest in a specific form of abatement, which they feel will better protect their asserted interests, the Court should be willing to hear such evidence, if the best possible judgment is to be rendered....
>
> In addition, there may be a difference in approach between the environmental groups and the United States. The United States is charged with representing a broad public interest, and, as the Government of the people, must represent varying interest, industry as well as individuals. The Court should at least hear and make of record the views of those groups seeking to represent a more narrow interest.

*United States v. Reserve Mining Company,* 56 F.R.D. at 418, 419. We agree with this reasoning and hold that in order to demonstrate inadequate representation under West Virginia Rule of Civil Procedure 24(a)(2), a private person seeking to intervene of right in a legal action in which a government agency represents the public interest generally must assert some specialized or private interest justifying intervention.

We now apply this rule to the instant set of facts. The petitioners' interest is similar to the DEP's in that both seek an ultimate termination of unlawful discharges of pollutants into the Indian Fork. The DEP's interest, however is broad and extends to representing the public, including the entire

Culloden community. According to W.Va. Code § 22–11–27 (1994), "[t]he provisions of [the WPCA] inure solely to and are for the benefit of the people generally of the state of West Virginia[.]" The DEP's broad interest may cause it to agree to permit the defendants to continue discharges into the Indian Fork for an extended period of time as being in the interests of the general public. The interest asserted by the petitioners, on the other hand, is a private and narrow one. The petitioners simply want the speedy abatement of the discharge of pollutants onto their land. We conclude, therefore, that the DEP does not adequately represent the petitioners' interest in its action against the defendants. Accordingly, the petitioners should be allowed to intervene in the DEP action.

## IV.

## CONCLUSION

In conclusion, we find that the petitioners claim an interest relating to the property or transaction which is the subject of the DEP action; the petitioners are so situated that the disposition of the DEP action may as. a practical matter impair their ability to protect that interest; and the petitioners' interest is not adequately represented by the DEP. Therefore, the petitioners meet all the conditions for intervention of right under Rule 24(a)(2) of the West Virginia Rules of Civil Procedure. Accordingly, we find that the · petitioners have a clear legal right to

intervene, and Judge Cummings has a legal duty to permit the petitioners to intervene in the DEP action. As noted above, another adequate remedy is not available to the petitioners. For these reasons, we grant the writ of mandamus prayed for by the petitioners.[7]

Writ granted.

Judge RISOVICH, sitting by temporary assignment.

Justice McGRAW dissents and files a dissenting opinion.

Justice SCOTT did not participate.

McGRAW, Justice, dissenting in part and concurring in part.

(Filed Dec. 13, 2000)

I dissent, narrowly, to the Court's holding in syllabus point six, which essentially defines "inadequate representation." I fear that the language of this syllabus point might be a bit too limiting, and could be turned on its head to actually *prevent* the intervention of parties, situated similarly to the petitioners, in future cases before this Court. I do not wish to take any action that would encourage such mischief.

Otherwise I concur in the decision reached by the Court in this generally well-written opinion.

---

7. The petitioners also argue that the circuit court ⸱ improperly considered delay in denying their motion to intervene inasmuch as Rule 24(a)(2) does not list delay as a factor for consideration.

Because we grant the relief sought by the petitioners, we decline to discuss this issue.