# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Cunningham Energy, LLC,**
**Proposed Intervenor Below, Petitioner**

**vs.)  No. 20-0346** (Kanawha County 20-P-20)

**Board of Education of the County of Kanawha, a Statutory Corporation,**
**Petitioner Below, Respondent**

**FILED**

**March 23, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Cunningham Energy, LLC, by counsel Gerald M. Titus III, Travis H. Eckley, and Wesley A. Shumway, appeals the March 10, 2020, order of the Circuit Court of Kanawha County denying its motion to intervene in the underlying condemnation action. Respondent Board of Education of the County of Kanawha, by counsel J. Nicholas Barth, filed a response in support of the circuit court's order. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds that the court below erred by failing to apply the correct standard in ruling on petitioner's motion to intervene. Accordingly, we reverse the circuit court's order and remand this case for further proceedings consistent with this decision. Because this case satisfies the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure, we find that a memorandum decision is appropriate to resolve the issues presented.

The dispute in this case concerns a 34.66-acre parcel of land ("the parcel") in Kanawha County and the mineral interests underneath and adjacent to the parcel. Until her death in March of 2011, Patsy Haas owned the surface of the parcel. She died intestate, and her children, Kelly Barnhart and James Haas, Jr., each inherited an undivided one-half interest in the surface of the parcel. On August 11, 2011, by general warranty deed, petitioner obtained an interest in the surface of the parcel.[1] Beginning in 2010 and continuing through September 2018, petitioner also

---

[1] Petitioner and respondent dispute whether petitioner obtained only Kelly Barnhart's interest in the surface of the parcel or whether petitioner obtained both Kelly Barnhart's interest and James Haas, Jr.'s interest. Regardless, petitioner was assessed the county property taxes on the full surface of the parcel from tax year 2013 through 2019, and petitioner paid those taxes.

1

accumulated various leasehold interests in the minerals underneath the parcel and underneath the property surrounding the parcel.[2] Petitioner is a business that owns and develops oil and gas interests.

On November 29, 2018, petitioner and Vesta O&G Holdings, LLC ("Vesta") executed a letter of intent ("the first LOI"), agreeing that Vesta would form a Delaware limited liability company for the purpose of acquiring and holding certain real property and leases held by petitioner ("the assets"). Among other things, the assets included petitioner's interest in the surface of the parcel, petitioner's leasehold interests in the minerals underneath the parcel, and petitioner's leasehold interests in minerals underneath property adjacent to the parcel. Under the first LOI, petitioner proposed transferring the assets to Vesta for Vesta to then transfer to a new limited liability company. Petitioner would be offered a minority ownership position in the new company, and Vesta would contribute capital to pay certain debts of petitioner and fund the drilling of seven oil wells in West Virginia. Petitioner claims that, within days of executing the first LOI, Vesta began paying petitioner's debts as agreed, and on December 4, 2018, petitioner transferred the assets to Vesta. Petitioner claims that although Vesta formed the new limited liability company as agreed, Vesta did not transfer the assets to that company.

In December of 2018, petitioner applied to the West Virginia Department of Environmental Protection ("WVDEP") for five "well work" permits for shallow horizontal oil wells.[3] The following February, petitioner applied to the WVDEP for two additional permits. The applications for the permits proposed that a well pad would be located on the surface of the parcel, with "laterals" extending through and beyond the parcel. WVDEP granted the applications and issued the seven permits in February and March of 2019.

Meanwhile, respondent was considering the parcel as the location for a new elementary school. On March 19, 2019, respondent purchased a special warranty deed from James Haas, Jr. purporting to convey to respondent a one-half undivided interest in the surface of the parcel.

On May 15, 2019, petitioner filed a lawsuit against Vesta in federal district court, alleging, among other things, that Vesta had breached the terms set forth in the first LOI. Vesta asserted a counterclaim against petitioner. A few months later, on October 18, 2019, they executed a second letter of intent ("the second LOI") along with a Memorandum of Understanding ("MOU"). Through these two documents, petitioner and Vesta agreed to dismiss all claims pending in federal district court without prejudice. The claims were eventually dismissed as agreed. Petitioner and Vesta also agreed to perform certain proposed transactions by November 15, 2019. The second LOI stated that, "[i]n the event the parties do not consummate the Proposed Transaction by [] [November 15, 2019], the [assets] shall be immediately assigned back to [petitioner]."

---

[2] We note that while the appendix record includes information concerning the various mineral leases obtained by petitioner, such as when they were obtained and from whom, these details are not germane to the resolution of this appeal.

[3] "It is unlawful for any person to commence any well work, including site preparation work which involves any disturbance of land, without first securing from the [WVDEP] a well work permit." W. Va. Code § 22-6-6(a) (in part).

The second LOI and the MOU acknowledged that the parcel would most likely be sold or condemned so that a school could be built on the parcel. The MOU stated that "[c]ondemnation and subsequent construction of the school would disrupt and effectively prohibit planned development of oil and gas resources underlying the [parcel], [and] the valuation of such development is projected to be $42,000,000 in present day terms." In the MOU, petitioner and Vesta agreed that, upon sale or condemnation of the parcel, Vesta would receive the first $5,000,000 and the remaining funds would be distributed as follows:

(1) if Vesta and [petitioner] are able to finalize a deal for further development of West Virginia and Canada resources, the next $25,000,000 of proceeds from the [parcel] will be allocated to development and operation of West Virginia resources, with any remaining funds directed to Canada operations.

(2) If, after good-faith negotiation, a deal for further development in West Virginia and Canada is *not* reached, the any [sic] remaining proceeds from the sale of the [parcel] (i.e. those above the first $5,000,000) will be allocated as follows: 80% to [petitioner] and 20% to Vesta. Additionally, all leaseholds and other interests previously transferred to Vesta from [petitioner] would be conveyed/transferred to [petitioner].

Petitioner obtained a report from a licensed professional engineer estimating the present value of future revenue that would be lost if petitioner was unable to drill seven horizontal wells. That report estimated the lost revenue would total $58,800,000. The report also estimated that an additional $21,000,000 would have been paid to the royalty owners during the estimated years of production. By letter dated October 31, 2019, Petitioner and Vesta jointly offered to sell their interests in the parcel to respondent for $42,000,000. Respondent did not accept the offer.

Petitioner alleges that Vesta did not comply with the second LOI and that Vesta failed to consummate the transactions proposed in the second LOI by November 15, 2019. Thereafter, in December of 2019 and January of 2020, petitioner made demands of Vesta to return the assets. Vesta did not return the assets to petitioner.

On January 16, 2020, respondent filed a petition for condemnation of the parcel and the mineral interests underlying the parcel ("the subject property") in the Circuit Court of Kanawha County. Vesta was named as a respondent in that proceeding. Petitioner was not.

On January 24, 2020, petitioner filed a second lawsuit against Vesta in federal district court, alleging breaches of the first LOI, the second LOI, and the MOU, and asking that Vesta be required to perform its obligations under the first LOI or return the assets to petitioner. Four days later, on January 28, 2020, petitioner filed a notice of lis pendens in the federal action seeking to enforce an equitable ownership interest in the parcel, the leasehold interests in the minerals underneath the parcel, and the leasehold interests in the minerals underneath the property surrounding the parcel.

The lis pendens was recorded in Kanawha County's property records on February 19, 2020. The federal lawsuit is still pending.[4]

Petitioner filed a motion to intervene in the condemnation action on February 19, 2020, arguing that it has a right to intervene under Rule 24(a)(2) of the West Virginia Rules of Civil Procedure and *State ex rel. Ball v. Cummings*, 208 W. Va. 393, 540 S.E.2d 917 (1999). The circuit court held a hearing on the motion on February 26, 2020. Although petitioner asserted that it was the rightful owner of the subject property pursuant to the second LOI, respondent opposed intervention, stating, "I would suggest it be reversible error to allow a non-deed holding party as a defendant in a condemnation action." Vesta did not take a position as to whether petitioner should be permitted to intervene. The circuit court denied petitioner's motion, explaining, "I believe that because at the time of the filing of this petition there was no notice other than this deed, that the motion to intervene is not proper in this case."

The circuit court entered an order on March 10, 2020, memorializing its ruling from the hearing. The circuit court found that, as of the date the petition for condemnation was filed, petitioner owned no interest in the subject property because petitioner had conveyed its interest in the surface of the parcel and its leasehold interests in the underlying minerals to Vesta. The circuit court also found that the lis pendens was filed after the petition for condemnation was filed. The circuit court, in denying the motion to intervene, concluded that petitioner had no interest in the subject property and, therefore, was not a proper party to the condemnation proceeding.

Petitioner appeals the circuit court's March 10, 2020 order.[5] In its sole assignment of error, petitioner argues that the circuit court applied the wrong legal standard in denying its motion to intervene as a matter of right. Petitioner asserts that it was not required to produce proof that it was the record owner of the subject property at the time the petition for condemnation was filed. Likewise, petitioner avers that it was not required to have record notice of a claimed property interest in the subject property at the time the petition for condemnation was filed. Rather, petitioner contends that it was only required to show a direct and substantial interest in the subject property and that it made such a showing in this case. Accordingly, petitioner states that the circuit court's decision to deny the motion was in error.

---

[4] In the federal action, petitioner asked the federal district court to grant its motion for "a mandatory preliminary injunction requiring the specific performance" of the second LOI and require Vesta to return the assets. *Cunningham Energy, LLC v. Vesta O&G Holdings, LLC*, No. 2:20-cv-00061, 2020 WL 6140463, at *3 (S.D. W. Va. May 21, 2020). This request was denied on March 21, 2020, on the ground that a preliminary injunction would not "preserve the court's ability to render a meaningful judgment on the merits." *Id.* at *5.

[5] The circuit court's order contained rulings on issues other than the motion to intervene, including respondent's motion for an order of entry, petitioner's motion to stay the proceedings, and Vesta's motion to inspect the property. As the only issue on appeal involves petitioner's motion to intervene, the circuit court's other rulings will not be addressed or disturbed in this memorandum decision.

Rule 24(a)(2) of the West Virginia Rules of Civil Procedure describes when intervention of right shall be permitted:

> (a) *Intervention of right.* — Upon timely application anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

In Syllabus Point 2 of *Ball*, we held:

> West Virginia Rule of Civil Procedure 24(a)(2) allows intervention of right in an action if an applicant meets four conditions: (1) the application must be timely; (2) the applicant must claim an interest relating to the property or transaction which is the subject of the action; (3) disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant must show that the interest will not be adequately represented by existing parties.

With regard to the quality of the interest claimed by a proposed intervenor, we have held:

> To justify intervention of right under West Virginia Rule of Civil Procedure 24(a)(2), the interest claimed by the proposed intervenor must be direct and substantial. A direct interest is one of such immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment to be rendered between the original parties. A substantial interest is one that is capable of definition, protectable under some law, and specific to the intervenor. In determining the adequacy of the interest in a motion to intervene of right, courts should also give due regard to the efficient conduct of the litigation.

*Id.* at Syl. Pt. 4.

At the outset, we observe that the circuit court's order makes no reference to *Ball* or the four conditions a proposed intervenor must establish to be entitled to intervene as a matter of right. Of those four conditions, the substance of the circuit court's order touches on only the second condition: whether petitioner has claimed an interest relating to the property that is the subject of the condemnation proceeding. Because the circuit court limited its discussion to the second condition, we begin our analysis by examining whether the circuit court correctly denied intervention on this isolated ground. Our review of this issue is de novo. *See* Syl. Pt. 3, *SWN Prod. Co. v. Conley*, ___ W. Va. ___, 850 S.E.2d 695 (2020) ("The standard of review of circuit court rulings on the elements governing a timely motion to intervene as a matter of right under Rule 24(a) of the West Virginia Rules of Civil Procedure is de novo.").

This Court has never held that, as a prerequisite to intervention, a proposed intervenor must have an ownership interest in the property at issue at the time the action commenced. We addressed this precise issue in *SWN Production Company*, examining the interests of a proposed intervenor

5

in the context of an action to quiet title to a piece of property. The proposed intervenor, SWN Production Company, LLC ("SWN"), argued that it should be permitted to intervene in the quiet title action because it held a leasehold in mineral rights underlying the property. *Id.* at ___, 850 S.E.2d at 700. It was undisputed that SWN obtained the leasehold years after the quiet title action commenced. The lower court denied SWN's motion to intervene, concluding "that the fact that there was no interest relating to the [property] when the complaint was filed was determinative as to SWN's ability to protect its interest." *Id.* This Court reversed the lower court's decision,

> find[ing] no authority supporting [the] argument that the interest in the property . . . must exist at the time of the filing of the Complaint. The language of Rule 24(a)(2) does not impose such a requirement and we are unwilling to create such a requirement in the face of silence in the plain language of the Rule.

*Id.* at ___, 850 S.E.2d at 705. The Court ultimately determined that SWN had satisfied the second condition of *Ball* because SWN established that its interest was "direct, substantial, and legally protectable." *SWN Prod. Co.*, ___ W. Va. at ___, 850 S.E.2d at 704.

Although *SWN Production Company* involved a quiet title action, our reasoning in that case applies equally to this condemnation action. We can find no authority supporting the circuit court's conclusion that petitioner's interest in the subject property must have existed at the time the petition for condemnation was filed. Furthermore, we observe that Rule 24(a)(2) imposes no such requirement. Instead, to satisfy the second condition of *Ball*, petitioner must show that its interest in the subject property is direct, substantial, and legally protectable.

Petitioner has done so here. Petitioner asserts it is the rightful owner of the subject property, petitioner has filed a lawsuit in federal court seeking an order requiring Vesta to return the property to petitioner, and petitioner has filed a lis pendens that has been recorded in the property records of Kanawha County. Should it be ultimately determined that petitioner is the rightful owner of the subject property, a determination in the condemnation action will result in petitioner "either gaining or losing 'by the direct legal operation and effect of the judgment to be rendered between the original parties.'" *SWN Prod. Co.*, ___ W. Va. at ___, 850 S.E.2d at 705 (quoting *Ball*, 208 W. Va. at 396, 540 S.E.2d at 920, syl. pt. 4 (in part)). Thus, the specific facts of this case compel the conclusion that petitioner has a direct, substantial, and legally protectable interest in the subject property. Furthermore, it is clear that petitioner's participation in the condemnation action will promote the efficient conduct of the litigation. Accordingly, petitioner has satisfied the second condition of *Ball*, and to the extent the circuit court determined otherwise, the circuit court erred.

Having concluded that petitioner has satisfied the second condition of *Ball*, we now turn to the third and fourth conditions: whether disposition of the condemnation action without petitioner will impair or impede petitioner's ability to protect its interest in the subject property and whether petitioner's interest will be adequately represented by existing parties. As previously noted, in denying petitioner's motion to intervene, the circuit court did not evaluate these conditions; however, because our review of these factors is de novo, we may proceed to evaluate them in this appeal. *See SWN Prod. Co.*, ___ W. Va. at ___, 850 S.E.2d at 697, Syl. Pt. 3.

6

Petitioner asserts on appeal, as it did below, that disposition of the action without its participation will impair or impede its ability to protect its interests and that the existing parties to the action are unable to adequately represent petitioner's interests. We agree with petitioner on both points. If petitioner is not permitted to intervene in this case, petitioner will be precluded from taking actions to protect its interests, such as pursuing a motion to dismiss the petition for condemnation, filing a counterclaim for inverse condemnation, or participating in the process of determining the amount of just compensation. Additionally, Vesta is unable to adequately represent petitioner's interest because, as is evident from the second LOI and MOU, petitioner's interests are distinct from and potentially adverse to Vesta's interests. Vesta's counsel even acknowledged as much during the February 26, 2020, hearing, stating that "in terms of whether we are virtually representing them, given the adversities, I certainly would understand [petitioner]'s feeling that [we]'re not." Therefore, upon our de novo review, we conclude that petitioner has satisfied the third and fourth conditions of *Ball*.

Although the satisfaction of the second, third, and fourth conditions of *Ball* weigh in favor of granting petitioner's motion to intervene, whether petitioner is ultimately entitled to intervene depends on whether the first condition of *Ball*—timeliness—is satisfied. We have recognized that "the question of the timeliness of a motion to intervene is a threshold issue." *SWN Prod. Co.*, ___ W. Va. at ___, 850 S.E.2d at 701. We review a lower court's determinations as to timeliness for an abuse of discretion. *See id.* at Syl. Pt. 1 ("'While Rule 24 of the West Virginia Rules of Civil Procedure provides for the intervention of parties upon a timely application, the timeliness of any intervention is a matter of discretion with the trial court.' Syl. Pt. 3, *State ex rel. Ball v. Cummings*, 208 W.Va. 393, 540 S.E.2d 917 (1999)."). Problematically, the circuit court failed to make any findings or conclusions concerning timeliness in its order, and we are unable to properly consider this issue on appeal. Consequently, we are unable to conclusively determine whether petitioner is entitled to intervene in the condemnation action. Therefore, we must remand this matter to the circuit court to make appropriate findings of fact and conclusions of law addressing the timeliness of petitioner's motion to intervene.[6] Should the circuit court determine that the motion was timely filed, it shall grant the motion.

For the foregoing reasons, we reverse the portion of the March 10, 2020, order denying petitioner's motion to intervene. We remand this case and direct the circuit court to make appropriate findings of fact and conclusions of law addressing the timeliness of petitioner's motion to intervene. Should the circuit court determine that the motion was timely filed, it shall grant the motion to intervene.

Reversed and remanded.

---

[6] "[T]imeliness of the application to intervene is not subject to mechanistic inquiry. In other words, there is no bright line delineating the point at which the passage of time, without more, is a bar to intervention as a matter of right." *SWN Prod. Co.*, ___ W. Va. at ___, 850 S.E.2d at 703. Furthermore, "[w]hile it is axiomatic that parties often do not want others meddling in their litigation, intervention should be permitted when there is no prejudice and greater justice could be obtained with the inclusion of a non-party who has a real interest in the matter being litigated." *Id.* at ___, 850 S.E.2d at 704 (citing *McDonald v. E.J. Lavino*, 430 F.2d 1065, 1074 (5th Cir. 1970)).

**ISSUED:** March 23, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton

**NOT PARTICIPATING:**

Justice Tim Armstead