375 S.E.2d 809

**WEST VIRGINIA PUBLIC EMPLOY-EES INSURANCE BOARD**

v.

**BLUE CROSS HOSPITAL SERVICE, INC., Health Service, Inc.**

**No. 17964.**

Supreme Court of Appeals of West Virginia.

Dec. 9, 1988.

---

Cletus B. Hanley, Charleston, Steven D. Herdon, Sol. Gen., for appellant.

M. Blane Michael and George G. Guthrie, Charleston, for appellee.

## PER CURIAM:

This case is before the Court upon the appeal of Charles Brown, in his official capacity as Attorney General of the State of West Virginia, as well as a taxpayer and beneficiary of the state insurance program, and Thomas Knight, in his official capacity as a member of the West Virginia House of Delegates, as well as a taxpayer and beneficiary of the state insurance program. The appellants contend that the trial judge abused her discretion when in two separate orders, dated September 26, 1986 and July 16, 1987, she denied two motions to intervene, and set aside a prior order dismissing a case. We hereby affirm.

On March 25, 1985, this Court set aside a summary judgment order in *WV PEIB v. Blue Cross Hospital Services*, 174 W.Va. 605, 328 S.E.2d 356 (1985).[1] In addition, the Court, stating that certain specifications developed during the bidding process were part of the contract, remanded the case to the circuit court for development of facts relating to which party terminated the insurance contract, thereby placing in question who was entitled to the "surplus" amounts.[2] The latter was the primary reason for the litigation, because it was a sizeable amount of money, i.e., in excess of six million dollars.

As the parties suggest, this Court's 1985 decision "breathed new life" into a case which had been in litigation since 1977. During the eight-year span of the case, attorney Cletus Hanley represented the Public Employees Insurance Board (PEIB). Hanley was appointed in 1977 by former Attorney General Chauncey Browning as Special Assistant Attorney General for the sole purpose of prosecuting the case.[3]

---

**1.** The Public Employees Insurance Board (PEIB) was comprised of State Auditor Glen Gainer, Chairman; Mary Martha Merritt, State Workers' Compensation Commissioner; and A. James Manchin, State Treasurer, during the period concerning the current dispute.

**2.** The "surplus" resulted from the annual premium paid by the State to Blue Cross. From the premium Blue Cross would pay out any claims against the policy. Then, Blue Cross would keep 5.75% of the premium as "retention charge" for administrative costs. The remainder, after claims and administrative costs were

paid, was the "surplus." *PEIB*, 174 W.Va. at 606, 328 S.E.2d at 357.

**3.** At the time he was appointed, Hanley worked in the Auditor's office. The letter of appointment stated that "no legal fees will be incurred by the State or Board, ... all expenses of litigation will be borne by the Board." In 1979, Hanley entered private practice. Chairman Gainer recalled a second letter from Browning in 1979, concerning Hanley's fee, which was not produced. Gainer recalled discussions between himself, former Attorney General Browning and Hanley, wherein the parties agreed that Hanley

Hanley was appointed because, prior to his appointment, an assistant attorney general had prepared a legal memorandum for PEIB and concluded that based on his research, PEIB had no cause of action against Blue Cross. Gainer disagreed with the attorney general's legal advice, and therefore requested Hanley's appointment.

In 1984, when current Attorney General Brown was elected to his post, he reviewed all appointments for special assistant attorneys general, and in the process of that review, permitted Hanley to continue his work on the *PEIB v. Blue Cross* case.

Shortly after this Court's opinion of March 22, 1985, Blue Cross and another defendant in the action counterclaimed for 16 million dollars. PEIB and Blue Cross began settlement negotiations in August, 1985. Hanley initially met with PEIB Chairman Gainer and the two discussed the possibility of settlement which Gainer favored.

During the period between the issuance of the March 22, 1985 opinion and the eventual October 17, 1985 settlement, the record is silent as to any efforts by Attorney General Brown's office to determine the status of the PEIB case even though, as PEIB Chairman Gainer noted, an assistant attorney general, Thomas Trent, had been serving as counsel for PEIB "for years."

On September 3, 1985, Hanley's opposing counsel offered PEIB one million dollars and payment of PEIB's attorney's fees, not to exceed $250,000. The following day Hanley, Gainer and the Governor met to discuss the settlement offer, at which time Gainer again expressed his favor.

On September 12, 1985 Hanley met with defense counsel and informed them that the one million dollar offer probably would be acceptable to PEIB. Hanley also submitted his fees, roughly 1800 hours at $130 per hour from 1979 to 1985, totalling $241,-521.25.[4] The defendants approved the settlement, pending PEIB Chairman Gainer's approval of the attorney's fees.

The PEIB held a public meeting on Thursday, October 17, 1985. Notices of the meeting were sent to PEIB members and listed the topic of discussion as the "Blue Cross case."[5] Hanley attended the meeting, as did Assistant Attorney General Trent.

The one million dollar settlement offer was discussed, as was the offer to pay PEIB's attorney's fees. The $250,000 ceiling was not raised at the meeting, although PEIB Chairman Gainer was aware of both the ceiling and attorney Hanley's actual bill. The concern of all members was the one million dollar offer for PEIB. After some discussion, all voted to accept the offer.[6] Later that day, October 17, 1985, the Circuit Court of Kanawha County entered a dismissal order in the *PEIB v. Blue Cross* case, as the parties had settled.

Upon an "informal request" by Attorney General Brown on Monday, October 21, 1985, the Circuit Court of Kanawha County conducted a limited inquiry of the parties. Assistant Attorney General Smith also attended. The purpose of the meeting was

---

would receive an unstipulated fee contingent upon recovery.

**4.** Although Hanley had worked on the case since 1977, he began private practice in 1979.

**5.** The Attorney General, in his brief and oral argument before this Court, noted that the PEIB meeting was an emergency meeting, suggesting there was some effort on the part of Hanley to quickly settle the case. In fact, the record below discloses that the emergency meeting was the result of a discussion between Treasurer Manchin and Auditor Gainer. Both discussed the matter earlier in the week and desired to get the money for the State as quickly as possible. Since both would be unavailable the following

week, they agreed to call the emergency meeting on Thursday, October 17, 1985.

Interestingly, Gainer recalled that at the meeting's inception, Assistant Attorney General Trent suggested that PEIB conduct the meeting in executive session and Gainer declined.

**6.** The only concerns expressed at the meeting were those of member Merritt. Trent assured Merritt that acceptance of the settlement would also act as a release of the sixteen million dollar counterclaim against PEIB. Hanley assured her that the offer of one million dollars, plus attorney fees, meant that the PEIB would receive one million dollars. At no time during the meeting did any member of the PEIB ask Hanley the amount of his fee.

to determine if Hanley's conduct during the settlement negotiations required the circuit judge to file a complaint with the State Bar Ethics Committee. During this meeting, and a subsequent meeting on October 30, 1985, the PEIB members each expressed their understanding of the settlement as being one million dollars, plus the payment of their attorney's fees. None of the members expressed any concern over the amount of Hanley's fee. All expressed that the settlement was in the best interest of the State. PEIB Chairman Gainer and PEIB member Manchin also lauded Hanley's longstanding effort in a case, which the Attorney General's office previously labeled futile.

During the first meeting of October 21, 1985, Assistant Attorney General Smith orally moved to intervene and set aside the judgment. However, at the second meeting, on October 30, 1985, he orally withdrew the motion due to this Court's ruling in *Manchin v. Browning*, 170 W.Va. 779, 296 S.E.2d 909 (1982), concerning the limitations upon the attorney general as a litigant. Following the second meeting, the circuit judge stated that she would file a report of the meetings with the State Bar.

Two months later, on December 31, 1985, the attorney general wrote PEIB and asked them to join him, or allow him to represent them, in setting aside the dismissal order.[7] The PEIB declined to act.

In January, 1986, the attorney general filed several motions in the Circuit Court of Kanawha County concerning the settled case, among them was the January 2, 1986 motion to intervene (apparently, as of right) and set aside the dismissal order.[8] Two hearings were again conducted where the circuit judge asked the attorney general to submit evidence in the record in support of the motion to intervene and set aside the judgment. Instead, the attorney general chose to rely on the statements of the PEIB members at the prior meetings before the circuit judge.[9]

---

**7.** Unlike the initial cause for the attorney general's concern, the attorney's fee, the memorandum requesting PEIB to either join Brown or allow Brown to represent PEIB in setting aside the settlement, directly addressed the adequacy of the one million dollar settlement:

> Instead of nothing, the State now has $1 million, thanks in particular to Auditor Gainer.
> But we can do much better. You did not get full, impartial and correct legal advice when you settled. I do not blame you for relying on this prior advice. But I believe that we can correct the mistake and earn millions of dollars more for our taxpayers.

**8.** The attorney general's motion to intervene does not specify whether under *W.Va.R.Civ.P.* 24, he was seeking to intervene as of right, or seeking permissive intervention. However, he alleged that pursuant to a section of the claims due the state act, *W.Va.Code*, 14-1-8 [1981], the chairman of PEIB could not settle the case without the attorney general's advice. Therefore, it appears as though Brown was alleging intervention as of right.

> Rule 24 reads, in pertinent part:
> Rule 24. Intervention. (a) Intervention of right.—Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of this State confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may be as a practical

matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

> (b) *Permissive intervention.* Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of this State confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or State governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

**9.** There were two hearings conducted on January 22, 1986, and January 31, 1986 on the two attorney general's motions concerning the PEIB case. Assistant Attorney General Walt Auvil appeared on behalf of the attorney general at the January 22 hearing. Auvil was unaware that the attorney general had filed the motion to intervene. On two separate occasions the trial judge asked Auvil to present evidence on the matter. Auvil refused. At the second hearing, Attorney General Brown appeared and made arguments concerning the motion to intervene.

On September 26, 1986, the circuit judge entered an order denying the attorney general's motion to intervene and set aside the judgment. She found that the motion was also untimely filed, and the attorney general lacked a statutory right to intervene. The court also noted PEIB's satisfaction with both the settlement and Hanley's work.

Later, another representative of the attorney general's office filed a motion to intervene (apparently alleging both permissive intervention and intervention as of right) on behalf of both appellants Brown and Delegate Knight. A brief hearing was conducted and again no evidence was offered on behalf of the movants. On July 21, 1987, the court again denied the motion to intervene. The court adopted the findings and reasoning contained in the prior order concerning the untimely filing, lack of standing, and PEIB's satisfaction with Hanley's work. The court also made an additional finding: that the manner in which Hanley's fee was paid did not create a conflict of interest.

West Virginia Rules of Civil Procedure 24, substantially similar to its federal counterpart, requires a timely motion to intervene.

■ The standard of appellant review of a trial court's decision in a rule 24 motion is contained in the syllabus of *Pauley v. Bailey*, 171 W.Va. 651, 301 S.E.2d 608 (1983):

'While Rule 24 of the West Virginia Rules of Civil Procedure provides for the intervention of parties upon a timely application, the timeliness of any intervention is a matter of discretion with the trial court.' Syllabus Point 10, *Pioneer Co. v. Hutchinson*, W.Va. [159 W.Va. 276], 220 S.E.2d 894 (1975), *overruled on other grounds, State ex rel. E.D.S. Fed. Corp. v. Ginsberg*, W.Va. [163 W.Va. 647], 259 S.E.2d 618 (1979).

The same standard has been applied in federal review of such decisions. In *NAACP v. State of New York*, 413 U.S. 345, 93 S.Ct. 2591, 37 L.Ed.2d 648 (1973), the party moving to intervene filed its motion just four days after the entry of a summary judgment order, yet the United States Supreme Court affirmed the trial judge's denial of intervention. The court enumerated the criteria for reviewing a trial judge's discretionary decision to deny a motion to intervene. Three areas were considered by the court: whether the underlying action had progressed to a point that intervention would substantially affect the parties to the original action; whether unusual circumstances exist which establish that the interest the movant alleges was inadequately protected; and whether the movant knew or should have known of the pendency of the action. *NAACP*, 413 U.S. at 366–69, 93 S.Ct. at 2602–04, 37 L.Ed.2d at 662–64.

■ First, in this case, the action had been dismissed three months prior to the initial written motion to intervene. Payment of the settlement had been made. Motions made this late in the progression of the underlying suit represent an "extreme example" of the effect on the parties to the underlying action. *Halderman v. Pennhurst State School and Hospital*, 612 F.2d 131, 134 (3d Cir.1979) (motion to intervene filed slightly less than one month after entry of a final order).

Second, based on the utter lack of contrary evidence adduced at the five hearings below, the trial court could properly find

At no time did the attorney general offer any evidence in the matter. Specifically, at no time did the attorney general offer the testimony of Assistant Attorney General Trent, who had been counsel to PEIB, during the critical seven-month period between this Court's decision in the *PEIB* case and the PEIB meeting wherein it accepted the settlement offer. The record is in direct contravention with appellant Brown's brief which states:

A factual issue that should have been resolved by the trial court is whether or not the P.E.I.B. entered into the settlement 'with the advice of the Attorney General.' Had the trial court permitted inquiry into the settlement, the trial court would have been presented with a factual basis indicating that the Attorney General had never provided advice to the P.E.I.B. with respect to the settlement. The Attorney General offered the testimony of Thomas Trent to the trial court during the January 31, 1986, hearing, but the trial court refused to permit Mr. Trent to testify.

Appellant's brief, p. 8.

that the movants' core interest, a fair settlement for the State, parallelled that of PEIB and was therefore adequately protected. It should also be noted that PEIB believed it received a fair settlement.

Finally, and perhaps most obvious, the trial judge found that the movants, specifically Attorney General Brown, knew or had reason to know of both the settlement and the eight-year-old lawsuit, as well as the relationship of Hanley and PEIB.

Hanley's appointment was brought to Brown's attention two years prior to the settlement. At the very least, during the critical seven-month period from the point that this Court "breathed new life" into the underlying action by its decision of March 25, 1985, until the PEIB meeting of October 17, 1985, all persons concerned, including appellants Brown and Knight, were on notice that PEIB had a viable action and Hanley was PEIB's counsel.

There is no evidence in the record of Brown's or Knight's attempt to ascertain the status of the case during this period, even though Assistant Attorney General Trent, counsel for PEIB "for years," was working as general counsel for PEIB during this period.[10]

In light of a record completely devoid of any efforts made by appellant Brown to fulfill his alleged statutory duties prior to the settlement, the Court cannot hold that the trial judge abused her discretion when she denied, as untimely filed, the appellants' motions to intervene, filed three months after the entry of the dismissal order.

AFFIRMED.

---

**10.** The attorney general's office, though unwilling to produce any evidence at the two hearings on the motion to intervene conducted on January 22, 1986 and January 31, 1986, has supplied the Court with a brief affidavit of Assistant Attorney General Trent, dated July 20, 1987, one day prior to the trial court's second entry of a dismissal order on the motion to intervene. Assuming that the affidavit is part of the record below, the trial judge could nonetheless properly determine that the motion was untimely as Trent merely denies actual knowledge of the pending settlement. However, the standard of reviewing the motion is "knew or should have known." As PEIB's general counsel during the period between this Court's decision and PEIB's acceptance of the offer, Trent should have known.