IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2020 Term

**FILED**
**November 2, 2020**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 19-0267

SWN PRODUCTION COMPANY, LLC,

Putative Intervenor Below/Petitioner

v.

COREY CONLEY et al.,

Plaintiffs and Defendants Below/Respondents

Appeal from the Circuit Court of Brooke County
The Honorable Jason A. Cuomo, Judge
Civil Action No. 14-C-75

REVERSED AND REMANDED

Submitted:  October 6, 2020
Filed: November 2, 2020

Timothy M. Miller, Esq.
Robert M. Stonestreet, Esq.
Jennifer J. Hicks, Esq.
Babst, Calland, Clements & Zomnir, P. C.
Charleston, WV
Counsel for Petitioner

Daniel J. Guida, Esq.
Guida Law Offices
Weirton, WV
Counsel for Respondent Corey Conley

Richard N. Beaver, Esq.
Phillips, Gardill, Kaiser & Altmeyer,
PLLC
Wheeling, WV
Counsel for Respondents Lee M. Rabb,
individually

and as Trustee of the Eli Rabb Revocable Trust
dated October 7, 2005 and Trinity Health System Foundation
*and*
Joseph G. Nogay, Esq.
Maximillian F. Nogay, Esq.
Sellitti, Nogay & Nogay, PLLC
Weirton, WV
Counsel for Respondents Trienergy, Inc., Trienergy Holdings, LLC, and WPP, LLC,

JUSTICE WORKMAN delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.     "While Rule 24 of the West Virginia Rules of Civil Procedure provides for the intervention of parties upon a timely application, the timeliness of any intervention is a matter of discretion with the trial court."  Syl. Pt. 3, *State ex rel. Ball v. Cummings*, 208 W.Va. 393, 540 S.E.2d 917 (1999).

2.     A circuit court's decision on an applicant's request for permissive intervention under Rule 24(b) of the West Virginia Rules of Civil Procedure is reviewed under an abuse of discretion standard.

3.     The standard of review of circuit court rulings on the elements governing a timely motion to intervene as a matter of right under Rule 24(a) of the West Virginia Rules of Civil Procedure is de novo.

4.     "West Virginia Rule of Civil Procedure 24(a)(2) allows  intervention of right in an action if an applicant meets four conditions: (1) the application must be timely; (2) the applicant must claim an interest relating to the property or transaction which is the subject of the action; (3) disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant must show that the interest will not be adequately represented by existing parties." Syl. Pt. 2, *State ex rel. Ball v. Cummings*, 208 W.Va. 393, 540 S.E.2d 917 (1999).

i

5.    "To justify intervention of right under West Virginia Rule of Civil Procedure 24(a)(2), the interest claimed by the proposed intervenor must be direct and substantial. A direct interest is one of such immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment to be rendered between the original parties. A substantial interest is one that is capable of definition, protectable under some law, and specific to the intervenor. In determining the adequacy of the interest in a motion to intervene of right, courts should also give due regard to the efficient conduct of the litigation." Syl. Pt. 4, *State ex rel. Ball v. Cummings*, 208 W.Va. 393, 540 S.E.2d 917 (1999).

6.    "In determining whether a proposed intervenor of right under West Virginia Rule of Civil Procedure 24(a)(2) is so situated that the disposition of the action may impair or impede his or her ability to protect that interest, courts must first determine whether the proposed intervenor *may* be *practically* disadvantaged by the disposition of the action. Courts then must weigh the degree of practical disadvantage against the interests of the plaintiff and defendant in conducting and concluding their action without undue complication and delay, and the general interest of the public in the efficient resolution of legal actions." Syl. Pt. 5, *State ex rel. Ball v. Cummings*, 208 W.Va. 393, 540 S.E.2d 917 (1999).

WORKMAN, Justice:

Petitioner, SWN Production Company, LLC (hereinafter "SWN") appeals an order entered on February 22, 2019, by the Circuit Court of Brooke County, West Virginia, denying SWN's second motion to intervene in an action seeking to quiet title to a parcel of property brought by Respondent and plaintiff below, Corey Conley (hereinafter "Mr. Conley"). Mr. Conley has aligned himself with SWN and adopted the arguments of SWN. The Respondents and defendants below include Lee M. Rabb, individually and as Trustee of the Eli Rabb Revocable Trust dated October 7, 2005 (hereinafter "the Rabb Trust"), Trienergy, Inc., Trienergy Holdings, LLC, WPP, LLC (hereinafter collectively "Trienergy"), and Trinity Health System Foundation ("Trinity Health"), or (the Rabb Trust, Trienergy, and Trinity Health hereinafter collectively "Respondents"). The underlying action involves competing claims and interests in the mineral rights to Mr. Conley's property. It is represented that SWN has interests in oil and gas properties that would be affected by interpretation of the relevant deed. After Mr. Conley filed his Complaint and after the circuit court denied SWN's first motion to intervene, SWN entered into an oil and gas lease with Mr. Conley. Thereafter, the circuit court denied SWN's second motion to intervene and it is from that order that SWN appeals to this Court.

Having considered the record, the various briefs submitted, the relevant law, and the oral arguments presented, we find that the circuit court abused its discretion in determining that the SWN motion to intervene was untimely and erred as a matter of law in finding: (1) that SWN had no property interest relating to the subject of the complaint,

(2) that disposition of the civil action would not impair or impede SWN's ability to protect its interests, and (3) that SWN's interests were adequately protected by Mr. Conley. Accordingly, this Court reverses the circuit court's order denying SWN's motion to intervene and remands this case to the Circuit Court of Brooke County, West Virginia, for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

In 1959, Maria H. Milliken, by deed (hereinafter "the Milliken Deed"), conveyed certain mineral interests in a 161.53-acre tract located in Brooke County, West Virginia, to Eli Rabb. The Milliken Deed granted, bargained, sold, and conveyed "all that coal in and under" the tract together with the "surface rights which are incident or necessary to the removal of said coal." Additionally, the deed included the "[r]ights to explore, operate and drill for Oil and Gas with all necessary rights to produce and market same." The Milliken Deed excepted a 1/8 royalty "of any and all production of gas and oil that may be discovered on said property." A "complete agreement" clause was included in the Milliken Deed providing:

> There is a complete agreement between [Milliken] and [Rabb], that because of the economic conditions, the low quality of the coal, and the uncertainty of marketing, that no specific start time has been designated. It is clearly understood that [Rabb], his heirs or assigns, may commence without notice to start mining operations at any time within the time limits set forth in the foregoing royalty agreement. Further, it could be that operations would be started in the latter of the year or so of this Deed or to be more clear in the 19th or 20th year, be it hereby agreed that so long as there remains coal to be mined, [Rabb] shall be allowed peacefully to mine and remove the remaining

2

coal so long as the period shall not exceed an additional five years nor pass the 30th day of December, 1985.

On June 5, 2007, Eli Rabb and his wife, Lee M. Rabb, executed a Farmout Agreement with respect to the oil and gas rights underlying the same 161.53-acre tract of property identified in the Milliken Deed. The Farmout Agreement was entered into with Trienergy and provided for the transfer of all the oil and gas interest in the 161.53-acre tract while excepting and reserving a 1.5% overriding royalty in all oil and gas saved and produced. Mr. Rabb conveyed the 1.5% overriding royalty interest as a gift to Trinity Health and conveyed his interest in the oil and gas rights to Trienergy by a Conveyance and Assignment of Oil and Gas Rights dated May 16, 2008.

In the meantime, the 161.53-acre tract described in the Milliken Deed was subdivided into several smaller tracts by the Milliken heirs. By deed dated June 26, 2000, Mr. Conley obtained the surface and mineral rights, excepting coal, from James Lee and Beatrice S. Milliken, to a 3.763-acre parcel (hereinafter "the Conley parcel") that was carved out of the 161.53-acre tract.

Eli Rabb died testate on October 31, 2009. He devised his assets, including any interest flowing from the Milliken Deed, to the Rabb Trust.

As a result of the various instruments of conveyance and assignment, multiple parties claimed certain rights related to the oil and gas underlying the 161.53-acre

3

tract. On May 5, 2014, Mr. Conley filed his action seeking, among other things, to quiet title to the oil and gas interests under the 3.763 acres of his property. Mr. Conley sought a declaration that he has good and marketable title to the mineral interests, including the oil and gas, underlying his property. Mr. Conley contends that the 1959 Milliken Deed acted merely as a lease of oil and gas rights to Eli Rabb and that the lease either lapsed, was invalid, or is unenforceable. Initially, Mr. Conley sued the instant Respondents, except for Trinity Health, as well as three other entities, Chesapeake Appalachia, LLC, Jamestown Resources, LLC, and AB Resources, all of whom were later dismissed.

Trienergy filed an answer generally denying that Mr. Conley had any interest in the oil and gas rights underlying the Conley parcel. The Rabb Trust filed a counterclaim seeking a declaration that Eli Rabb purchased the coal, oil, and gas underlying the 161.53-acre tract under the Milliken Deed, including the 3.763-acre Conley parcel. Trinity Health moved to intervene on the basis of the May 2008 recorded assignment of interest, evidencing a separate and distinct interest in an overriding royalty. Trinity Health's unopposed motion was granted on August 3, 2015.

In June 2016, Mr. Conley filed a motion for summary judgment requesting that the circuit court find the Milliken Deed to be unambiguous and to determine the legal effect of the language on the nature and ownership status of the oil and gas rights as referenced in the Milliken Deed. Specifically, Mr. Conley contended that the Milliken

4

Deed, by its terms, created an unenforceable perpetual leasehold in the oil and gas and/or that the lease was abandoned by Eli Rabb for failure to explore or market the oil and gas.

The Respondents filed cross-motions for summary judgment contending that they had ownership or interests in the oil and gas because the unambiguous language of the Milliken Deed conveyed a fee simple interest in the oil and gas to Eli Rabb that could not be abandoned.

On July 21, 2016, SWN first moved to intervene. SWN indicated that while it did not have a direct interest in the 3.763 Conley parcel, it had interests in other properties comprising the remainder of the 161.53-acre tract. Thus, SWN argued that its interests were at stake and would be affected by any construction of the Milliken Deed. SWN further represented that it had been actively developing oil and gas property in the northern panhandle of West Virginia since 2014 and had only learned recently of the action filed by Mr. Conley. The Respondents objected to intervention by SWN.

On August 16, 2016, the circuit court entered an order denying SWN's motion to intervene for four reasons. First, the circuit court concluded that it was untimely since it was filed more than two years after the complaint was filed and during the pendency of summary judgment motions. Second, the circuit court found that SWN had no interest relating to the Conley parcel. Third, the circuit court determined that since SWN had no interest in the property, the disposition of the action would not impair SWN's ability to

5

protect that interest. Fourth, the circuit court concluded that "to the extent [Conley] has aligned himself with SWN, SWN's interest are adequately represented by [Conley] in this matter."

In the order of August 16, 2016, the circuit court also granted Mr. Conley's request to delay ruling on the pending summary judgment motions for the purpose of engaging in limited discovery on the question of whether Mr. Rabb, or his attorney, was the party who prepared the Milliken Deed. The parties proceeded with limited discovery and renewed their respective motions for summary judgment in February 2017.

On June 16, 2017, the circuit court entered an order denying the cross-motions for summary judgment because it concluded that the language of the Milliken Deed was ambiguous regarding intent such that a jury determination was required. The circuit court concluded that a jury must determine who drafted the Milliken Deed and whether the intent of the parties was to convey the coal, oil and gas to Eli Rabb in fee, or in lease, or in some combination thereof. Additionally, the circuit court directed that if the jury found that the intent of the parties was to create a lease, the jury must determine whether the lease expired and, if so, when it expired.

While the summary judgment motions were pending, SWN entered into a lease with Mr. Conley on May 7, 2017, which was recorded on June 2, 2017. On August 16, 2018, the Respondents served SWN with a subpoena duces tecum requesting

6

information concerning SWN's oil and gas operations and leases within the 161.53-acre tract of the Milliken Deed. SWN objected to the subpoena on multiple grounds including the assertion of confidentiality and attorney-client privileges, and its position as a non-party.

On August 17, 2018, SWN filed a second motion to intervene. SWN argued that it should be permitted to intervene because it had a leasehold in the oil and gas rights underlying the Conley parcel at issue in the litigation. The Respondents opposed the motion to intervene and, instead, jointly moved for leave to file a third-party complaint against SWN.

By order entered February 22, 2019, the circuit court again denied the SWN motion to intervene. The circuit court found that the only difference between the first and second motion was the effort of SWN to create an interest in the Conley parcel more than three years after the action to quiet title was filed. The attempt at self-creation of interest and the filing of the second motion to intervene nearly a year and a half after entering into the lease was found to be untimely. The circuit court concluded that the fact that there was no interest relating to the Conley parcel when the complaint was filed was determinative as to SWN's ability to protect its interest and found that its interests are aligned with Mr. Conley's and thus adequately represented. Subsequent to the entry of the order denying intervention, the Respondents sought leave to withdraw their request to file a third-party complaint against SWN which was granted by the circuit court.

7

It is from the February 22, 2019 order denying SWN's second motion to intervene that SWN appeals to this Court.

## II. STANDARD OF REVIEW

In the instant appeal, this Court is asked to consider the denial of a request for intervention as governed by Rule 24 of the West Virginia Rules of Civil Procedure. Rule 24 governs the ability of a non-party to a lawsuit to intervene in the pending action and provides for intervention as a matter of right, permissive intervention and the procedure for intervening.

Rule 24(a) governing intervention as a matter of right provides:

> Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of this State confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Rule 24(b) governs permissive intervention and states, in part:

> Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of this State confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the original parties.

8

Motions to intervene require application of multiple standards of appellate review. We observe that both intervention as a matter of right and permissive intervention require an applicant for intervention to make a timely request. Thus, the question of the timeliness of a motion to intervene is a threshold issue. In regard to timeliness of intervention, this Court has held: "[w]hile Rule 24 of the West Virginia Rules of Civil Procedure provides for the intervention of parties upon a timely application, the timeliness of any intervention is a matter of discretion with the trial court." Syl. pt. 3, *State ex rel. Ball v. Cummings*, 208 W.Va. 393, 396, 540 S.E.2d 917, 920 (1999) (citing *Pioneer Co. v. Hutchinson*, 159 W.Va. 276, 278, 220 S.E.2d 894, 897 (1975), *overruled on other grounds*, *State ex rel. E.D.S. Federal Corp. v. Ginsberg*, 163 W.Va. 647, 259 S.E.2d 618 (1979)).

Additionally, as to permissive intervention, the text of Rule 24(b) governing permissive intervention specifically invokes language directing courts to exercise their discretion in considering issues of delay of the action or prejudice to the original parties. We have previously stated, and now hold that a circuit court's decision on an applicant's request for permissive intervention under Rule 24(b) of the West Virginia Rules of Civil Procedure is reviewed under an abuse of discretion standard. *Stern v. Chemtall Inc.*, 217 W.Va. 329, 337, 617 S.E.2d 876, 884 (2005) (finding that circuit court abused its discretion when it denied a request for permissive intervention).

9

With respect to mandatory intervention as a matter of right pursuant to Rule 24(a)(2) of the West Virginia Rules of Civil Procedure, this Court has not established a standard of review. We have observed that Rule 24(a)(2) is based on and is substantially similar to Rule 24(a)(2) of the Federal Rules of Civil Procedure and, in that regard, have indicated that "we follow our usual practice of giving substantial weight to federal cases in determining the meaning and scope of our rules of civil procedure." *State ex rel. Ball*, 208 W.Va. at 399, 540 S.E.2d at 923 (citing *Law. Disc. Bd. v. Cunningham*, 195 W.Va. 27, 33, f.11, 464 S.E.2d 181, 187, f.11 (1995) and *W. Va. Pub. Emps. Ins. Bd. v. Blue Cross Hosp. Serv., Inc.*, 180 W.Va. 177, 375 S.E.2d 809 (1998)). Some commentators have remarked: "[a]ppellate review of a trial court's determination of whether a would-be intervenor has satisfied the elements required for intervention as a matter of right under Rule 24(a) is generally de novo." Louis J. Palmer, Jr. and Robin Jean Davis, Litigation Handbook on West Virginia Rules of Civil Procedure, § 24 (5th ed. 2017). Additionally, other leading commentators have indicated that whether a request to intervene falls under intervention as of right or as a matter of permission results in important distinctions including implicating the level of review to be applied on appeal. Generally, permissive intervention is addressed to the discretion of the court while mandatory intervention typically poses a question of law. 7C Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure Civil §1902 (3d ed. 2007 & Supp. 2019).

This Court observes that the federal courts typically hold that the appellate review of a lower court order regarding intervention as a matter of right is de novo. *E.g.*,

*Brumfield v. Dodd*, 749 F.3d 339, 342 (5th Cir. 2014) (standard of review for denial of right to intervene is de novo); *In re Estate of Ferdinand E. Marcos Hum. Rts. Litig.*, 536 F.3d 980, 985 (9th Cir. 2008), *cert. denied sub nom. Hilao v. Revelstoke Investment Corp.* 556 U.S. 1182 (2009) (reviewing de novo the district court's denial of intervention as a matter of right and finding that the requirements for such intervention are to be broadly construed in favor of intervention); *Med. Liab. Mut. Ins. Co. v. Alan Curtis LLC*, 485 F.3d 1006, 1008 (8th Cir. 2007) (review of denial of mandatory intervention is de novo); *Alameda Water & Sanitation Dist. v. Browner*, 9 F.3d 88, 90 (10th Cir. 1993) (court of appeals will review rulings on motions to intervene as of right under a de novo standard).

Based upon the foregoing review of authorities and with consideration of the two distinct types of intervention, this Court holds that the standard of review of circuit court rulings on the elements governing a timely motion to intervention as a matter of right under Rule 24(a) of the West Virginia Rules of Civil Procedure is de novo.

With these standards of review in mind, we proceed to evaluate the assignments of error and the parties' respective arguments.

### III. DISCUSSION

SWN hinges the bulk of its argument on intervention as a matter of right pursuant to West Virginia Rule of Civil Procedure 24(a)(2). This Court has held:

West Virginia Rule of Civil Procedure 24(a)(2) allows intervention of right in an action if an applicant meets four conditions: (1) the application must be timely; (2) the applicant must claim an interest relating to the property or transaction which is the subject of the action; (3) disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant must show that the interest will not be adequately represented by existing parties.

*State ex rel. Ball*, 208 W.Va. at 396, 540 S.E.2d at 920, Syl. Pt. 2.

The assignments of error and arguments of the parties are readily distilled to addressing each of the four mandatory factors that SWN must meet in order to intervene in the civil action as of right. Failure to satisfy one of the mandatory requirements precludes intervention as of right. We proceed to our analysis of each condition SWN must meet.

## A. Timeliness of Motion to Intervene

It is apparent from the text of Rule 24(a)(2) that any application for intervention must be timely—if it is untimely, intervention must be denied. Thus, the threshold issue we must address is whether SWN timely moved for intervention as of right. SWN argues that the circuit court abused its discretion in finding that their motion for intervention was not timely and denying intervention on that ground. SWN contends that timeliness must be considered within the factual context of each case and further contends that the analysis must include consideration of the progression and status of the litigation as well as whether any prejudice would result from any delay due to intervention. In that regard, SWN argues that when it moved to intervene for the second time, no scheduling

12

order was in place, no trial date had been set, and only limited discovery had been conducted. Moreover, SWN claims that the Respondents demonstrated a de facto recognition of the interest of SWN by serving a broad subpoena for information on SWN and by moving to add SWN as a third-party defendant. It is argued that the intervention of SWN would not result in prejudice to the Respondents and would not disrupt the progress of litigation.

Conversely, the Respondents argue that SWN improperly sought to create an interest that it did not have at the time Mr. Conley filed his civil action. It is contended that SWN has inadequately explained why it was dilatory and waited nearly one-and a-half years between the time it entered into the lease with Mr. Conley and the filing of a second motion to intervene when it knew of the litigation, knew discovery was proceeding, and was aware that summary judgment motions were pending. The Respondents reason that the filing of the subpoena seeking real property information does not excuse the dilatory conduct of SWN because there has not been any meaningful response to the subpoena. Additionally, Respondents state that their motion to file a third-party complaint against SWN was a preemptive motion designed to meet the possibility that the circuit court would permit intervention by SWN providing for assertion of slander of title and trespass claims against Mr. Conley and SWN for entering into a lease while the ownership of the oil and gas was in dispute. Respondents contend that it was only because the circuit court denied a motion to file a counterclaim against Mr. Conley and denied the motion to intervene that they deemed their claims moot and abandoned the effort to join SWN.

13

In considering the issue of timeliness, we recognize that timeliness of the application to intervene is not subject to mechanistic inquiry. In other words, there is no bright line delineating the point at which the passage of time, without more, is a bar to intervention as a matter of right. It has been said that courts must approach the issue of timeliness with flexibility and a view toward considering all the circumstances. *E.g.*, *NAACP v. New York*, 413 U.S. 345, 366 (1973) (the point to which suit has progressed is but one factor in determining timeliness of intervention, it is not solely dispositive, and must be determined from all the circumstances).

The circuit court addressed the matter of timeliness in a perfunctory fashion concluding that the only difference between SWN's second motion to intervene and the first one, which was denied, were facts created by SWN some three years after the Complaint was filed, and more than a year and a half after the denial of the initial motion. The circuit court found that the motion to intervene was filed some four years after the Complaint was filed and that SWN waited a year and a half after entering into the oil and gas lease with Mr. Conley before filing the motion to intervene.

The circuit court looked solely to the age of the case in addressing the question of timeliness, thereby failing to consider the status of the proceedings and the circumstances of the parties. This Court finds it compelling that no scheduling order had been entered, no trial date had been set, and no discovery deadline imposed. The circuit court simply did not address the question of what prejudice to Respondents, if any, would

result from allowing the intervention of SWN. Our review of the record fails to illuminate any prejudice or harm to Respondents, and, given the lack of advancement of the case for trial proceedings, it is not apparent that the case would suffer from delay caused by intervention. On the other hand, SWN may be prejudiced because a jury trial will proceed to determine the construction of the Milliken Deed and thereby determine whether SWN has a valid interest in its leasehold even though SWN was afforded no opportunity to appear and participate at trial and will have no ability to appeal in the event its interest is adversely affected. In terms of the circumstances of the parties, the circuit court order makes no mention of the subpoena seeking information and documents regarding a wide range of matters, including, but not limited to, title opinions, mineral ownership reports, abstracts of titles, purchase and sales agreements, asset acquisition agreements, operating and capital cost expenditures relating to pooled units, gross revenue documents, production costs, maps, and surveys, propounded to SWN by Respondents. The information sought, at a minimum, suggests that there is reason to believe that SWN has property interests that may be affected by construction of the Milliken Deed and that Respondents tacitly recognize the existence of such interest. Our review of the record does not reflect that the case had proceeded so far that intervention would affect the original parties.

In reviewing and balancing the question of timeliness, we are also guided by the generally accepted proposition that although the movant bears the burden of establishing its right to intervene, Rule 24 is to be given a liberal construction. 7C Wright & Miller, *supra* § 1904, 6 James W. Moore et al., Moore's Federal Practice § 24.03 (1) (a)

15

(3d ed. 2008). Rule 24 is designed, in part, to be a practical procedural tool promoting efficiency of the courts by resolving related issues in a single lawsuit while also protecting the interests of both the original parties and the non-parties. *See, Smuck v. Hobson*, 408 F.2d 175, 179 (D.C. Cir. 1969) (intervention involves the accommodation of competing goals in achieving judicial economies of scale while preventing lawsuits from becoming too complex or unending). While it is axiomatic that parties often do not want others meddling in their litigation, intervention should be permitted when there is no prejudice and greater justice could be obtained with the inclusion of a non-party who has a real interest in the matter being litigated. *See McDonald v. E. J. Lavino*, 430 F.2d 1065, 1074 (5th Cir. 1970) (court should allow intervention in those circumstances when no original party will be hurt, and greater justice could be obtained).

Based upon the foregoing analysis, we conclude that the circuit abused its discretion in finding that SWN's motion to intervene as of right was untimely because it based its denial solely on the passage of time without considering the factual context of the case, the status of the proceedings, and the prejudice, if any, to the Respondents and to SWN. Having concluded that the circuit court erred in denying SWN's motion to intervene as of right on the basis of untimeliness, we now turn to addressing the other three factors an applicant to intervene must meet in order to intervene in pending litigation.

16

**B. Interest in Property or Transaction**

We now address whether SWN has "an interest relating to the property or transaction which is the subject of the action" pursuant to Rule 24(a)(2).

SWN argues that the circuit court erred when it determined that it had no interest relating to the property or transaction at the time Mr. Conley filed his Complaint and in finding that SWN could not create an interest subsequent to the filing of the Complaint. Simply stated, SWN's position is that by virtue of its lease of the oil and gas mineral interests, it has a property interest in the 3.763-acre Conley tract which is at issue in the underlying title dispute. Thus, SWN argues that it has an absolute right to intervene.

Conversely, Respondents argue that SWN had no ownership interest at the time the Complaint was filed and instead sought to create an interest in the Conley parcel by improperly entering into an oil and gas lease with Mr. Conley some two years after the Complaint was filed and when SWN knew the ownership rights were in dispute. Respondents assert that the effort at creating an interest in the property was for the purpose of intervention which it contends is improper.

With respect to the interest claimed for purposes of intervention, this Court has held:

> To justify intervention of right under West Virginia Rule of Civil Procedure 24(a)(2), the interest claimed by the

17

proposed intervenor must be direct and substantial. A direct interest is one of such immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment to be rendered between the original parties. A substantial interest is one that is capable of definition, protectable under some law, and specific to the intervenor. In determining the adequacy of the interest in a motion to intervene of right, courts should also give due regard to the efficient conduct of the litigation.

*State ex rel. Ball*, 208 W.Va. at 396, 540 S.E.2d at 920, Syl. Pt. 4.

Applying those principles that for intervention, a movant's interest must be direct, substantial, and legally protectable, to the instant case, we find that SWN claims an adequate property interest for purposes of intervention as of right. It is undisputed that SWN has an ownership interest in the Conley parcel. *See Valentine v. Sugar Rock, Inc.*, 234 W.Va. 526, 539, 766 S.E.2d 785, 798 (2014) (recognizing that an oil and gas lease is a mineral interest, that the lessee is the owner of the mineral interest during the term of the lease, and that oil and gas leases are a form of real property protectable by law); *McCullogh Oil, Inc. v. Rezek*, 176 W.Va. 638, 640, 346 S.E.2d 788, 790 (1986) (finding that an oil and gas lease is a conveyance of an interest in the land). Further, West Virginia jurisprudence establishes that all persons who claim an interest in property are necessary and indispensable parties to a quiet title action. *See O'Daniels v. City of Charleston*, 200 W.Va. 711, 716, 490 S.E.2d 800, 805 (1997) (when a court proceeding directly affects an interest in real property those persons claiming an interest in the property are necessary parties). We further observe that it is well-recognized that "interests in property are the most

18

elementary type of right that Rule 24(a) is designed to protect." 7C Wright & Miller, *supra* § 1908.1.

We find that SWN's acquisition of its property right after Mr. Conley filed his Complaint to quiet title is of no moment. This Court finds no authority supporting Respondent's argument that the interest in the property or transaction must exist at the time of the filing of the Complaint. The language of Rule 24(a)(2) does not impose such a requirement and we are unwilling to create such a requirement in the face of silence in the plain language of the Rule.[1]

Our review compels the conclusion that the oil and gas lease interest claimed by SWN is a direct and substantial interest of SWN in the Conley property. It is an interest protectable under law and specific to SWN. The quiet title action involves determination of the question of ownership of the oil and gas rights. Clearly, such determination will result in SWN either gaining or losing "by the direct legal operation and effect of the judgment to be rendered between the original parties." *State ex rel. Ball*, 208 W.Va. at 396, 540 S.E.2d at 920, Syl. Pt. 4. SWN's interest in the Conley parcel may be invalidated

---

[1] We do not consider the Florida cases cited by the Respondents because they are inapposite. In *Minge v. Davison*, 115 So. 510 (Fla. 1928), the Florida court addressed a motion to intervene filed in a quiet title action after the trial court entered judgment. Here, no such judgment has been entered. The case of *Nelson Bullock Co. v. South Down Development Co.*, 181 So. 365 (Fla. 1938) is not applicable because Florida did not, and it appears, still does not, have a right or rule regarding mandatory intervention as of right.

by judgment even though it was not a party to the case and had no opportunity to be heard. Moreover, any judgment may also detrimentally affect SWN's other oil and gas leases in parcels which have the Milliken Deed in the chain of title. *See Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994) (finding that lumber companies had an interest sufficient for intervention because their existing timber contracts were threatened by an injunction potentially prohibiting the United States Forest Service from selling certain timber).

Accordingly, we find that the circuit court erred in concluding that SWN had no property interest and observe that it failed to apply the appropriate analysis regarding SWN's interest in the property. *State ex rel. Ball*, 208 W.Va. at 396, 540 S.E.2d at 920, Syl. Pt. 4. We now proceed to consider the third condition for intervention of right—the impairment of the applicant's ability to protect its interest.

## C. Impairment of Ability to Protect Interest

With respect to the factor requiring a court to consider whether disposition of the action may impair or impede the applicant's ability to protect its interest this Court has held:

> In determining whether a proposed intervenor of right under West Virginia Rule of Civil Procedure 24(a)(2) is so situated that the disposition of the action may impair or impede his or her ability to protect that interest, courts must first determine whether the proposed intervenor *may* be *practically* disadvantaged by the disposition of the action. Courts then must weigh the degree of practical disadvantage against the interests of the plaintiff and defendant in conducting and concluding their action without undue complication and delay,

20

and the general interest of the public in the efficient resolution
of legal actions.

*State ex rel. Ball*, 208 W.Va. at 396, 540 S.E.2d at 920, Syl. Pt. 5.

We observe that the circuit court did not analyze the question of whether there was an impairment of SWN's ability to protect its property interest in accord with our jurisprudence as enunciated in *State ex rel. Ball*. *Id*. Instead, the circuit court concluded that since there was no property interest at the time the complaint was filed, the disposition of the case will not impair any property interest of SWN.

SWN contends that the circuit court did not undertake any analysis regarding whether SWN may be practically disadvantaged by disposition of the case. It is argued that the circuit court failed to consider SWN's ownership interest in the lease and how determination of the action may practically impair its ownership rights not only to the oil and gas underlaying the Conley parcel, but to other parcels in which SWN has an ownership or operating interest in and which are in the chain of title from the Milliken Deed.

The Respondents link their argument to the filing of the Complaint, contending that SWN had no property interest in the Conley parcel at the time the Complaint was filed. Thus, the argument is that it had no interest to protect.

We need not dwell on this factor. Inasmuch as we have concluded that SWN has an ownership interest in the title to the Conley parcel, it is plain that such interest may

21

be practically affected by disposition of the case that will determine title and ownership issues. It is beyond question that the lack of participation in the litigation and trial before a jury may impair or impede SWN's ability to protect their interest. Moreover, in weighing any disadvantage to SWN against the interest of Mr. Conley and the Respondents in conducting and concluding their action without undue complication and delay, we are persuaded by the action of the parties that there will be no undue complication or delay since Mr. Conley indicates he desires the participation of SWN and Respondents have made plain, by the service of the information gathering subpoena and the motion (subsequently withdrawn) to bring SWN in as a third-party defendant, that SWN has interests that may be affected by the civil action. We also find that the interest of the public in the efficient resolution of legal actions is properly served by permitting SWN's intervention.

Accordingly, this Court concludes that the circuit court erred in concluding that the disposition of the civil action would not impair or impede SWN's ability to protect its property interest. We now proceed to consideration of the fourth prong of Rule 24(a)(2) regarding whether SWN's interest is adequately represented by existing parties.

## D. Adequate Representation by Existing Parties

The circuit court determined that SWN aligned with Mr. Conley at least since entering into the oil and gas lease on March 7, 2017. At that time, the circuit court found, SWN knew of the dispute regarding the oil and gas rights underlying the Conley property

and therefore cannot "complain that its fate is tied to the resolution of this case." The circuit court remarked that if SWN had concerns about the ownership of the property, "it simply could have waited until this action was resolved to enter a lease with the victorious party."

SWN argues that the circuit court erred because its interests were not adequately protected by Mr. Conley. SWN complains that the circuit court did not engage in any analysis of the prong of adequate representation as required by Rule 24(a)(2) and instead wrongly resorted to conclusory statements. SWN states that no party occupies a position similar to SWN's role as a lessee with rights and intent to develop, by use of pooling together its various interests, including those of the Conley parcel. SWN asserts that any judgment will impact leases with other tracts in the chain of title from the Milliken Deed that are not part of the Conley parcel and Mr. Conley has no interest in title disputes involving other parcels. However, SWN contends that it has a strong interest in the resolution of the Milliken Deed which appears in the chain of title in other properties SWN owns or controls in Brooke County, West Virginia. It is contended that Mr. Conley has no stake in protecting those interests. SWN argues that its interest is greater than Mr. Conley's due to the financial investment risks of developing the oil and gas interests. Finally, SWN contends that Mr. Conley simply does not have the financial resources to properly challenge the competing claims of the parties.

In opposition, the Respondents argue that SWN entered into the lease with Mr. Conley with full knowledge of the title dispute and should not be rewarded for attempting to create an interest after the complaint was filed. The contention is that the interest of Mr. Conley and SWN are completely aligned such that SWN's interest is identical to, and adequately protected by, Mr. Conley. Additionally, it is argued that there is no compelling evidence that Mr. Conley cannot adequately protect SWN's interest.

In addressing the factor of adequate representation, this Court has recognized that "generally courts compare the interests asserted by the proposed intervenor with the interests of the existing party." *State ex re. Ball*, 208 W.Va. at 403, 540 S.E.2d at 927 (citing 59 Am. Jur.2d *Parties* § 141). In further elucidation, the Court stated:

> If the proposed intervenor's interest is not represented by the existing party, or the existing party's interests are adverse to those of the proposed intervenor, intervention should be granted. If the interests of the proposed intervenor and the existing party are similar, "a discriminating judgment is required on the circumstances of the particular case, but [the proposed intervenor] ordinarily should be allowed to intervene unless it is clear that the existing party will provide adequate representation for the absentee." 7C Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 1909, p. 319 (footnote omitted). *See also* 26 Fed. Proc. L.Ed. Parties § 59:303. Finally, if the interests are identical, intervention should be denied unless there is a compelling showing as to why the existing representation is inadequate. *See* 26 Fed. Proc. L.Ed. Parties § 59:303. A compelling showing may include, but is not limited to, adversity of interest, the representative's collusion with an opposing party, or nonfeasance by the representative. 26 Fed. Proc. L.Ed. Parties § 59:304.

208 W.Va. at 403, 540 S.E.2d at 927.

Our review of the record and arguments of the parties compels the conclusion that the instant matter presents a situation where the interests of SWN as the proposed intervenor and the existing party, Mr. Conley, are similar rather than adverse or identical. Accordingly, our plenary review focuses on the circumstances of the case, with the recognition that ordinarily, the intervention should be permitted. Indeed, the showing required of inadequate representation "should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538, n.10 (1972). Moreover, "all reasonable doubts should be resolved in favor of allowing the absentee, who has an interest different from that of any existing party to intervene so that the absentee may be heard in his own behalf." 7C Wright & Miller, *supra* § 1909.

We observe that Mr. Conley has adopted the positions and legal arguments as well as the authorities set forth in SWN's brief. Specifically, Mr. Conley remarked that SWN has far more at stake in the case than he does and further represented that he does not have the financial resources to fully and adequately protect SWN's interests. We are convinced that SWN's interests are significantly different from Mr. Conley's due to the nature of SWN's business and its stated intent to finance and invest in developing the oil and gas by the mechanism of pooling which Mr. Conley has no interest in doing and no financial capital to undertake. We also consider that SWN's interest in the construction of the Milliken Deed is greater than that of Mr. Conley's due to its interests in property beyond the Conley parcel that will be affected by the Milliken Deed. We are also persuaded by the representations of SWN that its interests are distinct because Mr. Conley has received

25

a per acre bonus payment for the execution of the lease and will retain those funds regardless of any production by SWN. It is stated that while Mr. Conley would benefit from production through payment of royalties, if the lease is not extended or SWN does not undertake development activities within the five-year term, the lease will expire. In that event, Mr. Conley would have the benefit of the initial bonus payment and have the ability to lease the rights again, which would involve the opportunity to negotiate another bonus payment.

Accordingly, this Court finds that the circuit court erred when it concluded that Mr. Conley adequately represented the interests of SWN.

In conclusion, we find that SWN (1) filed a timely motion to intervene, (2) has an interest in the property or transaction which is the subject of the quiet title civil action, (3) is so situated that the disposition of the quiet title action may, as a practical matter, impair its ability to protect that interest, and (4) SWN's interest is not adequately represented by an existing party. Thus, SWN has a clear legal right to intervene in the pending civil action.[2]

---

[2] Given this conclusion, it is not necessary for this Court to consider the question of permissive intervention.

## IV. CONCLUSION

For the reasons stated above, the February 22, 2019, order denying SWN's second motion for intervention in the above-styled matter is reversed and the case is remanded to the Circuit Court of Brooke County, West Virginia for further proceedings consistent with this opinion.

Reversed and remanded.